DUTCH POINT CREDIT UNION, INC. *v.* CARON AUTO WORKS, INC., ET AL.
(12322)

O'CONNELL, FREEDMAN and SCHALLER, Js.

Argued April 29—decision released September 27, 1994

*Robert C. Lubus, Jr.,* with whom, on the brief, were *David M. Kutzner* and *Charles M. Stango,* law student intern, for the appellant (plaintiff).

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant commissioner of motor vehicles).

SCHALLER, J. The plaintiff appeals from the trial court's judgment for the defendants[1] regarding the

---

[1] The defendants in this case are Caron Auto Works, Inc., Caron Motors, Inc., and Lawrence DelPonte, the commissioner of motor vehicles.

sale of a motor vehicle pursuant to General Statutes § 14-150. The plaintiff claims on appeal that the trial court improperly (1) determined that § 14-150 satisfies constitutional guarantees of due process of law, and (2) denied its claim for damages.

The plaintiff was the first lienholder of record on an automobile owned by Elizabeth Oree. After the vehicle was involved in an accident in Manchester and at the request of the Manchester police department, the defendant Caron Motors, Inc. (Caron Motors), towed the vehicle to its place of business. The named defendant, Caron Auto Works, Inc. (Caron Auto), then took possession of the vehicle after Oree asked Caron Auto to repair it. Several weeks after this discussion, however, Oree had neither paid the deposit requested by Caron Auto before it would commence work on the vehicle nor removed the vehicle from Caron Auto's premises.

Believing that Oree had abandoned the automobile and seeking to recover towing and storage expenses, Caron Auto filed with the department of motor vehicles (department) a notice of intent to sell an abandoned vehicle pursuant to General Statutes § 14-150. Caron Auto published notice of its intent to sell in the Hartford Courant, but did not notify the plaintiff of its intent to sell the vehicle. The plaintiff's lien was readily ascertainable from the vehicle's certificate of title on file at the department. At a public auction, Caron Auto sold the vehicle to Caron Motors. Caron Motors, in turn, sold the vehicle to a bona fide purchaser. Both sales were made free of the plaintiff's lien on the vehicle, and the plaintiff was not notified of the vehicle's sale.

The plaintiff then commenced an action against Caron Auto, Caron Motors and the defendant commissioner of motor vehicles seeking to recover damages from Caron Auto and Caron Motors on the ground that

the sale of the vehicle should have been made subject to the plaintiff's lien. The plaintiff also sought a declaratory judgment with respect to the constitutionality of § 14-150.

The trial court ruled that the plaintiff was not entitled to damages[2] and that the provisions of § 14-150 did not deprive the plaintiff of due process protection. In its memorandum of decision, the court determined that the department receives approximately 25,000 requests per year from garage owners for permission to sell abandoned vehicles, and, in order to enable a garage owner to provide actual notice to a lienholder in each case, the department would have to send the garage owner a copy of the vehicle's certificate of title. The court stated that it believed that furnishing a copy for each request would unduly burden the department.

The plaintiff claims on appeal that the trial court improperly concluded that the sale of the vehicle pursuant to § 14-150 was constitutional. The plaintiff also contends that because the sale of the vehicle was improper, it is entitled to damages for Caron Auto's conversion of its property interest. Before reaching the plaintiff's claims, we consider, sua sponte, whether the circumstances of this case have rendered the appeal moot. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Grace Community Church* v. *Bethel,* 30 Conn. App. 765, 769, 622 A.2d 591, cert.

[2] The trial court found that the vehicle was worth approximately $300 following the accident, but was sold for approximately $2800 because Caron Auto and Caron Motors had repaired and painted it. The court concluded that Caron Auto and Caron Motors were entitled to deduct towing, storage and repair expenses from the amount received from the sale.

denied, 226 Conn. 903, 625 A.2d 1375, cert. denied, 510 U.S. 944, 114 S. Ct. 83, 126 L. Ed. 2d 332 (1993).

In this case, the plaintiff obtained a judgment against Oree in an effort to collect the amount owed on the lien. The plaintiff, however, did not recover the full amount of the debt.[3] As a result, we conclude that the plaintiff's claim for damages is not moot, as the plaintiff is entitled to attempt to recover the full amount secured by its lien. Because the plaintiff's claim for damages is based on a determination that the sale of the vehicle violated principles of due process, the plaintiff's claim for declaratory relief is also not moot, and we now address the constitutionality of § 14-150.[4]

Pursuant to § 14-150,[5] an abandoned vehicle that presents a menace to traffic or public safety will be

---

[3] We cannot determine from the record in this case whether the judgment against Oree was for the full amount of the debt. The record does disclose that Oree did not pay the full amount of the judgment or the debt.

[4] The United States District Court for the district of Connecticut found a previous version of General Statutes § 14-150 unconstitutional in *Tedeschi* v. *Blackwood,* 410 F. Sup. 34 (D. Conn. 1976). In that case, the court concluded that towing, storage and sale pursuant to the statute deprived vehicle owners of property without due process of law in violation of the fourteenth amendment to the federal constitution. The court held that the statute did not grant affected parties the right to a hearing regarding the appropriateness of towing, storage or sale of a vehicle. The legislature has amended the statute to provide for a hearing process. See General Statutes § 14-150 (f) (1). In this case, we are considering whether the current provisions of § 14-150 deprive lienholders of property interests without sufficient notice to satisfy the mandates of due process.

As did the District Court in *Tedeschi,* other courts have considered whether the recognition of a lien for towing or storage charges with regard to a vehicle that has been towed or stored at the direction of a public officer violates the vehicle owner's constitutional rights. See, e.g., *Stypmann* v. *City & County of San Francisco,* 557 F.2d 1338 (9th Cir. 1977); see generally annot., 85 A.L.R.3d 199, Lien for Towing or Storage, Ordered by Public Officer, of Motor Vehicle (1978); annot., 64 A.L.R.3d 814, Garageman's Lien: Modern View as to Validity of Statute Permitting Sale of Vehicle Without Hearing (1975).

[5] General Statutes § 14-150 provides in pertinent part: "(b) Any inspector of the motor vehicle department, any officer attached to an organized

towed and stored at the command of a public officer. The statute creates a lien on the vehicle for storage charges, and provides for the sale of the vehicle after a certain period of storage in order to pay for certain charges, including those for towing and storage. A garage owner who stores a vehicle valued at $500 or

police department or any state police officer upon discovery of any motor vehicle, whether situated within or without any highway of this state, which is a menace to traffic or public health or safety, shall take such motor vehicle into his custody and cause the same to be taken to and stored in a suitable place.

* * *

"(g) The owner or keeper of any garage or other place where such motor vehicle is stored shall have a lien upon the same for his storage charges. . . . [I]f the current market value of such motor vehicle as determined in good faith by such owner or keeper does not exceed five hundred dollars and such motor vehicle has been stored for a period of not less than fifteen days, such owner or keeper may . . . sell the same for storage and towing charges owed thereon, provided a notice of intent to sell shall be sent to the commissioner [of the department of motor vehicles] and the owner of such motor vehicle, if known, five days before the sale of such vehicle. If the current market value of the such motor vehicle as determined in good faith by such owner or keeper exceeds five hundred dollars and if such motor vehicle has been so stored for a period of ninety days, such owner or keeper shall . . . sell the same at public auction for cash, at his place of business, and apply the avails of such sale toward the payment of his charges and the payment of any debt or obligation incurred by the officer who placed the same in storage, provided such sale shall be advertised in a newspaper published or having a circulation in the town where such garage or other place is located three times, commencing at least five days before such sale; and, if the last place of abode of the owner of such motor vehicle is known to or may be ascertained by such garage owner or keeper by exercise of reasonable diligence, notice of the time and place of sale shall be given him by mailing such notice to him in a registered or certified letter, postage paid, at such last usual place of abode, at least five days before the time of sale.

* * *

"(j) The commissioner of motor vehicles shall adopt regulations . . . (1) specifying the circumstances under which title to any motor vehicle abandoned within the limits of any highway may be transferred to any person, firm or corporation towing such vehicle, and (2) establishing the procedure whereby such person, firm or corporation may obtain title to such motor vehicle."

less may sell the vehicle, provided the garage owner notifies the owner of the vehicle, if known, and the department of his or her intent to sell. A garage owner who stores a vehicle valued at more than $500 must sell the vehicle at a public auction, provided the garage owner sends notice by mail of the date and place of the sale to the last place of abode of the vehicle owner, if known, and provided the garage owner advertises the sale "in a newspaper published or having a circulation in the town where such garage . . . is located three times, commencing at least five days before such sale . . . ." General Statutes § 14-150 (g). The statute does not, however, provide for actual notice to lienholders of the vehicle.

Section 14-150 effectuates the state's interest in enforcing traffic laws and in protecting the public from hazardous street conditions. The statute provides a means for those assisting the state in the towing and storage of abandoned vehicles to recover the costs of their services. The plaintiff claims, however, that the statute deprives lienholders of procedural due process of law as guaranteed by the fourteenth amendment to the federal constitution and article first, § 8, of the state constitution.[6] The plaintiff contends that the sale of a vehicle subject to a lien without actual notice to the lienholder deprives the lienholder of property without due process of law.

---

[6] In this case, we need not engage in an independent analysis of our constitution. Although the plaintiff invokes the due process clause of the Connecticut constitution, it has not provided a separate analysis of its claim. See *Orsi* v. *Senatore,* 31 Conn. App. 400, 427 n.19, 626 A.2d 750, cert. granted, 228 Conn. 908, 635 A.2d 1228 (1993). Furthermore, "[o]ur Supreme Court has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut constitutions have the same meaning and impose similar limitations. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Morales,* 33 Conn. App. 184, 193, 634 A.2d 1193, cert. granted, 228 Conn. 928, 640 A.2d 116 (1993). We also conclude that federal principles of due process are dispositive of the plaintiff's claim.

The due process clauses of the federal and state constitutions can be violated only by conduct of the state, as they do not restrict the actions of private persons or entities. *State* v. *Holliman,* 214 Conn. 38, 43, 570 A.2d 680 (1990). Here, pursuant to § 14-150, a public officer makes the determination that a vehicle should be towed and summons a towing company to tow the vehicle. The towing company removes the vehicle only at the direction of the officer, who designates the garage where the vehicle is to be stored. The garage owner obtains a lien and may sell the vehicle to recover costs pursuant to the statutory scheme designed to effectuate the state's interest in enforcing traffic laws and maintaining public safety. The state monitors the sale of an abandoned vehicle by requiring notice of intent to sell and by establishing the procedures for the transfer of title of the vehicle. Because the state is prominently involved in the towing, storage and sale of an abandoned vehicle, we conclude that state action exists to trigger the constitutional requirements of due process. See *Stypmann* v. *City & County of San Francisco,* 557 F.2d 1338, 1341–42 (9th Cir. 1977).

In order to prevail on its procedural due process claim, the plaintiff must show that (1) its property interest is cognizable under the due process clause, (2) it has been deprived of its property interest, and (3) the deprivation of the property interest has occurred without due process of law. *Double I Ltd. Partnership* v. *Plan & Zoning Commission,* 218 Conn. 65, 76, 588 A.2d 624 (1991). Here, the plaintiff, as a lienholder, possesses a substantial property interest in the vehicle that is significantly affected by the sale of the vehicle pursuant to § 14-150. Because the purchase of the vehicle results in the passage of title free of all liens on the vehicle, the sale nullifies the plaintiff's property interest. The plaintiff's interest, therefore, is entitled to due process protection.

"[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause . . . a State must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Mennonite Board of Missions* v. *Adams,* 462 U.S. 791, 795, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983). We conclude that the circumstances of this case are analogous to those of the United States Supreme Court case of *Mennonite Board of Missions,* where the court found that the notice requirements of a statute allowing for the sale of property were insufficient to provide due process of law. In that case, the state statute allowed for the sale of real property where the payment of property taxes had been delinquent for a specified period of time. The statute required notice by publication to advertise the sale and notice by mail to the owner of the property subject to sale. The statute, however, did not provide for actual notice to a mortgagee of the property. As a result, property could be sold free of all liens and encumbrances without actual notice being provided to a mortgagee.[7] The United States Supreme Court found that notice by publication did not adequately protect the property interests of a mortgagee for the purposes of due process.

In this case, § 14-150 allows for the sale of personal property that is deemed abandoned. Although the statute provides for notice by mail to the owner of the property and notice by publication to advertise the sale, the statute does not provide for actual notice to a lienholder on the property. Under the statute, the property can

[7] The statute in question in *Mennonite Board of Missions* v. *Adams, supra,* 462 U.S. 791, allowed for a period of redemption whereby a party with an interest in the property could redeem it. Although the statute provided for notice by mail to the owner of the right to redeem, no such notice to a mortgagee was required.

be sold free of all liens without notice being accorded to a lienholder. Thus, the lienholder in this case and the mortgagee in *Mennonite Board of Missions* v. *Adams,* supra, 462 U.S. 791, as holders of security interests in property subject to public sale pursuant to state statute, occupy similar positions. Because the plaintiff in this case, as did the mortgagee in *Mennonite Board of Missions,* faces the extinguishment of its property interest without actual notice of the proceedings that may nullify that interest, we conclude that notice by publication pursuant to § 14-150 is not reasonably calculated to inform the plaintiff of the sale of the vehicle and does not satisfy the requirements of due process.

Notice by publication is "designed primarily to attract prospective purchasers to the [public] sale, [and is] unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices." Id., 799. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable." Id., 800. In this case, because the plaintiff's lien and identity are readily determinable from the department's records, constructive notice alone would not satisfy the requirements of due process.[8]

Furthermore, because notice by publication is a less reliable method of informing lienholders, such notice is not reasonable where inexpensive and efficient mech-

---

[8] Although the state requires the garage owner to notify the owner of the vehicle, such notice does not translate into notice for the lienholder. "Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest . . . cannot be expected to lead to actual notice to the [lienholder]." *Mennonite Board of Missions* v. *Adams,* supra, 462 U.S. 799.

anisms exist for providing actual notice. See id., 799. Even where a party has the "ability to take steps to safeguard its interests . . . the State may [not] forgo . . . relatively modest administrative burden[s] . . . ." Id., 799–800. In this case, the administrative burden to the department would not be so great. The department could provide a certificate of title to a garage owner where a lien existed on the vehicle, and any cost for providing the certificate could be borne by the garage owner.[9] The garage owner could then be required under the statute to provide notice by mail to the lienholder. Because we determine that the notice requirements of § 14-150 are insufficient to protect the property interests of a lienholder for the purposes of procedural due process, we conclude that § 14-150 is unconstitutional.

Because we conclude that § 14-150 is unconstitutional, we address the plaintiff's claim for damages. The plaintiff contends that Caron Auto's sale of the vehicle constituted a conversion of its lien interest. Before we can consider the merits of this claim, however, we must determine whether a person who acts pursuant to a statute that is subsequently declared unconstitutional can face personal liability for its actions.

Under the historic "void ab initio" rule, a statute declared to be unconstitutional was, "in legal contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County,* 118 U.S. 425, 442, 6 S. Ct. 1121, 30 L. Ed. 178 (1886); see 1 J. Sutherland, Statutes and Statutory Construction (5th Ed. 1994 Rev.) § 2.07. Such a statute was deemed to have no legal effect and, in turn, offered no retroactive protection from civil liability for actions taken in reliance on it. See 1 J. Sutherland, supra, § 2.07; see, e.g., *Smith* v. *Costello,*

---

[9] Testimony at trial revealed that, in the past, the department had charged a nominal fee for providing a copy of a certificate of title.

77 Idaho 205, 290 P.2d 742 (1955). The United States Supreme Court, however, in an effort to address equitable and practical concerns, has moved away from the principle of void ab initio. According to the court, "[t]he actual existence of a statute, prior to [a constitutional] determination, is an operative fact and may have consequences which cannot justly be ignored. . . . The effect of the subsequent ruling as to invalidity may have to be considered in various aspects—with respect to particular relations . . . and particular conduct . . . . [A]n all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified." *Chicot County Drainage District* v. *Baxter State Bank,* 308 U.S. 371, 374, 60 S. Ct. 317, 84 L. Ed. 329 (1940). The court also stated that "[h]owever appealing the logic of [void ab initio] may have been in the abstract, its abandonment reflected our recognition that statutory . . . rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity." *Lemon* v. *Kurtzman,* 411 U.S. 192, 199, 93 S. Ct. 1463, 36 L. Ed. 2d 151 (1973).

In response to the abandonment of the principle of void ab initio, a number of jurisdictions have adopted tests of reasonableness and good faith to determine the consequences of conduct undertaken pursuant to a statute subsequently deemed invalid. See 1 J. Sutherland, supra, § 2.05; see, e.g., *Shreve* v. *Western Coach Corp.,* 112 Ariz. 215, 216–17, 540 P.2d 687 (1975); *Downs* v. *Jacobs,* 272 A.2d 706, 708 (Del. 1970); *Wagshal* v. *Selig,* 403 A.2d 338, 341–42 (D.C. App. 1979); *Perkins* v. *Eskridge,* 278 Md. 619, 634–35, 366 A.2d 21 (1976), overruled on other grounds in *Parrott* v. *State,* 301 Md. 411, 483 A.2d 75 (1984); *Yekhtikian* v. *Blessing,* 90 R.I. 287, 290–91, 157 A.2d 669 (1960). Those jurisdictions have concluded that, generally, it would be an injustice

to penalize a person for actions taken under a statute that was valid at the time of the conduct. We join those jurisdictions, and recognize that citizens have the right to accept statutory law as written until it is repealed or invalidated; citizens are not required to speculate on the constitutionality of a statute before acting under it. We, therefore, hold that citizens will not face personal liability for acting reasonably and in good faith reliance on the provisions of a statute that is later declared unconstitutional. In this case, there is no evidence to suggest that Caron Auto acted unreasonably or in bad faith when it sold the vehicle pursuant to the terms of § 14-150. As a result, the plaintiff may not recover on its claim for damages.

The judgment is reversed in part and the case is remanded with direction to render judgment as on file except as modified to declare General Statutes § 14-150 unconstitutional in accordance with this opinion.

In this opinion the other judges concurred.