### DAVID B. COOK *v.* ANN N. COOK
(14097)

DUPONT, C. J., and HEIMAN and HENNESSY, Js.

Argued May 1—decision released July 18, 1995

*Charles F. Brower,* with whom, on the brief, was *Marcus G. Organschi,* for the appellant (defendant).

*Michael J. Mannion,* for the appellee (plaintiff).

HEIMAN, J. In this dissolution action, the defendant appeals from postjudgment orders of the trial court denying her motions for contempt and for a restraining order. On appeal, the defendant claims that the trial court improperly (1) denied her motion for contempt by finding that the separation agreement did not require the plaintiff to pay off an equity credit line and (2) denied her motion for an order seeking to enjoin the plaintiff from further encumbering the marital residence. We conclude that the appeal is moot and accordingly dismiss it.[1]

The following facts are necessary for the resolution of this appeal. On May 31, 1989, the parties' twenty-four year marriage was dissolved. As part of the dissolution decree, the trial court incorporated various provisions of a separation agreement signed by the parties

---

[1] On April 12, 1995, notice was sent to the parties to be prepared to address the issue of mootness at oral argument before this court.

prior to the decree. Article XV of that agreement concerned the disposition of the parties' real property and provided for the sale of the marital residence with the net proceeds of the sale to be divided as follows: two thirds to the defendant and one third to the plaintiff. The net proceeds were to be determined "by deducting any mortgages, real estate taxes, broker's commissions, attorney's fees associated with the closing, and other customary real estate adjustments from the gross proceeds of the sale." At the time of the dissolution decree, the marital home was encumbered by a first mortgage and an equity credit line.

Article XV further provided for the distribution of the proceeds of the sale of a house built on speculation (investment property) and owned jointly by the plaintiff and his business partner. Upon the sale, the gross proceeds were to be used to pay the equity credit line encumbering the marital property. Any net proceeds would then be divided equally between the parties. In the event that the marital property was sold before the investment property, the equity credit line was to be transferred to the investment property. In addition, the rental income from the investment property was to be applied to the balance owed on the equity credit line.

On September 6, 1994, the defendant filed a motion for contempt, alleging that subsequent to the dissolution decree, the plaintiff had further encumbered the investment property with an equity credit line of $25,000. This credit line had to be paid at the time that the investment property was sold and, as a result, the gross proceeds of the sale were insufficient to pay the entire equity credit line encumbering the marital residence, and there were no net proceeds remaining to be distributed to the parties. In addition, the defendant alleged that the plaintiff had taken additional advances from the equity credit line encumbering the marital residence for his own purchases. In her motion

for a restraining order filed the same day, the defendant requested that the plaintiff be enjoined from further encumbering the marital property.

On September 29, 1994, hearings were held on the defendant's motions. Counsel for the defendant informed the court that the investment property had been sold and that the gross proceeds of the sale had been used to pay down the equity credit line on the marital residence. The gross proceeds, however, were insufficient to pay off the equity credit line completely. The defendant alleged that this was due to the plaintiff's borrowing an additional $25,000 against the investment property, taking an advance of approximately $19,000 against the equity credit line, and writing checks totaling approximately $46,000 against the equity credit line. Counsel for the defendant then claimed that article XV required that the equity credit line be satisfied at the time of the sale of the marital residence and that the defendant was entitled to two thirds of the net proceeds of that sale after the deduction of only the first mortgage. The trial court informed counsel that the issue of the calculation of the net proceeds on the sale of the marital home was premature as the marital residence had not yet been sold. Counsel then stated that there was, however, an issue regarding regular payments on the equity credit line.

In his defense, the plaintiff testified that the tenants who had been renting the investment property had moved out and there was no rental income to cover the monthly payments on the equity credit line as provided in article XV. He, therefore, made those payments with his own funds. The additional funds withdrawn against the equity credit line were drawn to reimburse the plaintiff for the payments made on the equity credit line when rental income was unavailable. In addition, the plaintiff testified that the $25,000 borrowed against the investment property was necessary to complete the

building and to provide further funds to continue making payments on the equity credit line encumbering the marital residence. Regarding the motion for a restraining order, counsel for the plaintiff informed the court that the defendant had already written a letter to the bank that froze the account.

During argument by counsel regarding the admissibility of certain checks drawn on the equity credit line, the trial court again clarified for the parties that the only issue before it was the responsibility of the parties in so far as paying toward and withdrawing against the home equity loan. The issue of the distribution of the proceeds upon the sale of the marital home and the ultimate liability of either party on the equity credit line were issues that the trial court stated would have to be raised upon the subsequent sale of the marital home.

On September 30, 1994, the trial court denied both of the defendant's motions without memorandum of decision. In response to the defendant's motion for articulation, the trial court stated that its examination of article XV of the dissolution decree did not reveal any order of the court that the equity credit line be frozen and that the plaintiff could not, therefore, be held in contempt for utilizing those funds. In addition, the trial court pointed to the fact that article II of the separation agreement, which prohibited either party from incurring any debt for which the other's property may be liable, was not incorporated into the dissolution decree. The trial court continued, "Whatever may be the rights of the parties at the time the marital residence is sold is not now before the court." This appeal followed.

Subsequent to the filing of the appeal and the submission of the briefs, the marital residence was sold on March 31, 1995. As a result of the sale, the equity

credit line at issue was paid in full and the remaining proceeds distributed to the parties.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Dutch Point Credit Union, Inc.* v. *Caron Auto Works, Inc.,* 36 Conn. App. 123, 126, 648 A.2d 882 (1994); see also *Gagnon* v. *Planning Commission,* 222 Conn. 294, 299, 608 A.2d 1181 (1992). "Mootness applies to situations where events have occurred during the pendency of an appeal that make an appellate court incapable of granting practical relief through a disposition on the merits. . . . The standards governing mootness are well established. Because this court has no jurisdiction to give advisory opinions, no appeal can be decided on its merits in the absence of an actual controversy for which judicial relief can be granted." (Internal quotation marks omitted.) *Thorn Americas, Inc.* v. *Torres,* 34 Conn. App. 303, 305, 641 A.2d 386 (1994).

This court can afford no practical relief to the defendant. See *Dutch Point Credit Union, Inc.* v. *Caron Auto Works, Inc.,* supra, 36 Conn. App. 126. Her motions for contempt and for a restraining order were addressed to the plaintiff's use of the funds available through the equity line of credit encumbering the marital residence.[2] That line of credit has since been paid

---

[2] In oral argument before this court, counsel for the defendant claimed that the motion for contempt addressed the failure of the plaintiff to pay off the entire equity credit line at the time of the sale of the investment property. The trial court, however, viewed the motion for contempt as limited to the use of the funds in the equity credit line prior to the sale of the marital residence. At the hearing on the motion for contempt, the trial court clearly informed the defendant that the issue of who would be obligated to pay the equity credit line upon the closing of the sale of the

and the marital residence has been sold. There is, therefore, no line of credit against which the plaintiff can borrow or be enjoined from borrowing, and the defendant's appeal must be dismissed as moot.[3]

The appeal is dismissed.

In this opinion the other judges concurred.

marital residence would have to be decided at a later time. In its articulation, the trial court again stated that its decision was limited to a consideration of whether the plaintiff could withdraw funds against the equity credit line. The trial court expressly declined to determine the ultimate issue of the distribution of the liability for that line of credit, saying that such a determination must await the sale of the marital residence. If the defendant disagreed with the distribution of the proceeds after the sale, a motion for contempt could have been filed at that time and the trial court would then have properly before it the question of which party bore ultimate liability for payment of the equity credit line.

[3] We recognize that there is an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review," but conclude that this is not such a case. In *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995), our Supreme Court stated: "Our cases reveal that for an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of such action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as a surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot."

The defendant's appeal here fails to meet these requirements. Although her action is of limited duration because the court's order of dissolution included the provision of the separation agreement that the marital residence be sold, the second and third requirements for the exception to the mootness doctrine have not been meet. The marital residence has been sold and the equity credit line completely paid. As a consequence, there is no likelihood that the question presented will arise again to affect the rights of this defendant. Nor does this defendant represent a class of litigants for whom she may be considered a surrogate. In addition, this is not a case that presents a question of such public importance that this court should determine the merits of the appeal. This failure to meet all three of the requirements set out in *Loisel* v. *Rowe*, supra, 233 Conn. 382–83, precludes our reviewing the defendant's claims under the exception to the mootness doctrine for cases that are "capable of repetition, yet evading review."