[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Bank of New Haven was the first lienholder on a certain motor vehicle which is the subject in this action. On November 8, 1997, after an accident, the vehicle was towed to the defendant Karas Motors, Inc. On or about January 29, 1998, the plaintiff contacted the defendant and agreed to pay the defendant towing and storage fees in the amount of $1800. However, on or about January 29, 1998, when an agent of the plaintiff attempted to tender the $1800 fee, he was refused and told for the first time that the subject vehicle had been previously stripped of parts for auction sale by the defendant. On or about March 31, 1998, the plaintiff tendered the $1800 fee and the remainder of the vehicle was then turned over to the plaintiff.
The plaintiff filed a four count complaint against the defendant which, as revised, alleges that the defendant's acts constitute a negligence per se violation of General Statutes § 14-150 (count one); negligence (count two); conversion (count three); and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a (count four).
The defendant has moved to strike the complaint in its entirety. "The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaints to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
 I
The defendant moves to strike count one on the ground that it fails to state a cause of action for a negligence per se based on a violation of General Statutes § 14-150.[1] The CT Page 9769 defendant's contention is that since the plaintiff is only a lienholder, it is not within the class of persons the statute was intended to protect. The plaintiff concedes that the motion to strike count one should be granted, and the defendant's motion to strike count one is granted.
 II
The defendant moves to strike count two on the ground that it does no more than incorporate the allegations of count one and realleges facts that are legally insufficient to state a cause of action for negligence per se. The plaintiff argues in opposition that count two states a cause of action for common law negligence because it alleges that the defendant acted unreasonably in not notifying the plaintiff lienholder before selling the vehicle, thereby causing the plaintiff foreseeable harm.
While it is true that count two incorporates the allegations of the first count, an action for violation of General Statutes § 14-150, it adds that "[t]he Defendant failed to act in a reasonably prudent manner when it sold said vehicle because it failed to notify the Plaintiff lien holder when it knew or reasonably should have known that said vehicle was secured by a lien and the existence of a lien was readily ascertainable through the Department of Motor Vehicles." Count two also alleges that" [t]he aforementioned acts and/or omissions of the Defendant constitute negligence, and as a direct result of said negligence the Plaintiff suffered damages."
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384, 650 A.2d 150 (1994). "[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) Mendillov. Board of Education, 246 Conn. 456, 483-84, 717 A.2d 1177
(1998). CT Page 9770
But for the right of an owner or keeper of a garage to sell a motor vehicle pursuant to General Statutes § 14-150 (g) to satisfy his lien for storage and towing charges, there would be little question of the defendant's duty to the plaintiff. "Broadly considered, it might be said that the duty to exercise a reasonable care arises whenever the activities of two persons come so in conjunction that the failure to exercise that care by one is liable to cause injury to the other." Swentusky v.Prudential Insurance Co., 116 Conn. 526, 533, 165 A. 686 (1933). Pursuant to General Statutes § 14-150 (g), "[i]f the current market value of a [stored] motor vehicle as determined in good faith . . . exceeds five hundred dollars and if such motor vehicle has been stored for a period of ninety days, such [garage] owner or keeper shall, unless an application filed by the owner . . . is pending and the owner of such motor vehicle has notified such [garage] owner or keeper that such application for hearing has been filed, sell the same at public auction for cash, at his place of business, and apply the avails of such sale toward the payment of his charges . . . provided such sale shall be advertised in a newspaper published or having a circulation in the town where such garage or other place is located three times, commencing at least five day before such sale."
In Dutch Point Credit Union v. Caron Auto Works, Inc.,36 Conn. App. 123, 648 A.2d 882 (1994), cert. denied, 214 Conn. 801,569 A.2d 550 (1995), the defendant Caron Motors, Inc. towed a damaged motor vehicle to its place of business at the request of the police. The named defendant then took possession of the vehicle after the owner requested that it be repaired. After the owner of the vehicle failed to pay the deposit for the repair and failed to remove it, the named defendant sold the vehicle pursuant to General Statutes § 14-150. The plaintiff, however, was the first lienholder on the vehicle, its "lien was readily ascertainable from the vehicle's certificate of title on file at the department" of motor vehicles, and, other than notice by publication, the defendant "did not notify the plaintiff of its intent to sell the vehicle." Id., 125. The Appellate Court held the statute unconstitutional because "notice by publication pursuant to § 14-150 is not reasonably calculated to inform the plaintiff [lienholder] of the sale of the vehicle and does not satisfy the requirements of due process." Id., 132.
In Dutch Point the court also held that the plaintiff could not recover on its claim for damages because the defendant had CT Page 9771 acted pursuant to a statute that had not yet been declared unconstitutional. Id., 133-35.
The General Assembly has not acted to remedy the constitutional defect in § 14-150 found by the Appellate Court. In light of Dutch Point, the defendant had a duty to the plaintiff not to destroy the security for the plaintiff's lien. Unlike the situation in Dutch Point, moreover, that duty is now actionable in an action at law for damages. The opinion in DutchPoint was released on September 27, 1994. The defendant in the instant case allegedly acted over four years later. The defendant may not avoid liability by claiming reliance on a statute held by an appellate court to be unconstitutional well before his actions. Cf. Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996). "It is a familiar legal maxim that everyone is presumed to know the law and ignorance of it excuses no one. This rule is founded on public policy and based on the principle that acts of a person must be considered as having been done with knowledge of the law, for otherwise the law could be evaded with facility." Hebb v.Zoning Board of Appeals, 150 Conn. 539, 542, 192 A.2d 206 (1963); see also Frito Lay, Inc. v. Planning and Zoning Commission,206 Conn. 554, 563, 538 A.2d 1039 (1998) (same)
Like the defendant in Dutch Point, the defendant here sold a motor vehicle without giving actual notice to the first lienholder. The defendant had a duty not to destroy the plaintiff's security. It allegedly breached that duty, resulting in foreseeable damages to the plaintiff. A party may be liable for impairment of a security interest due to acts of negligence where it is reasonably foreseeable that such negligence will result in impairment of the security interest. Baldwin v. MarinaCity Properties, Inc., 145 Cal.Rptr. 406, 411, 79 Cal.App. 393
(2d App. 1978).
The defendant has not identified any public policy reason that would preclude liability under the facts alleged in the complaint. Compare Mendillo v. Board of Education, supra,246 Conn. 456. Since facts provable under the second count of the complaint state a cause of action for common law negligence, the defendant's motion to strike that count is denied.
 III
The defendant moves to strike count three which alleges that the defendant converted the plaintiff's lien interest in the CT Page 9772 vehicle parts by selling them without authority and without prior notice to the plaintiff lienholder. The defendant argues that this count is legally insufficient to state a cause of action for conversion because the defendant had authority to sell the vehicle and, thus, did not convert it. The defendant again bases its authority to sell the vehicle on the statutory lien it acquired on the vehicle pursuant to General Statutes § 14-150
(g), and in the superiority of that lien to the plaintiff's lien, pursuant to General Statutes § 42a-9-310.[2]
The plaintiff argues in opposition that while the defendant acquired a possessory right to the vehicle pursuant to the statute, its authority to sell the vehicle was also controlled by that statute. The plaintiff claims that under the facts alleged here the defendant's sale was not statutorily authorized and constituted a conversion of the plaintiff's interest in the vehicle parts.
"Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Citations and internal quotation marks omitted.) Falker v.Samperi, 190 Conn. 412, 419, 461 A.2d 681 (1983).
As discussed in part II and in light of Dutch Point, the defendant was not authorized to destroy the plaintiff's property interest by selling the motor vehicle, at least without giving the plaintiff actual notice of the sale.[3] In the absence of this statutory right, the defendant had no right to sell the vehicle. 53 C.J.S., Liens, § 30. The defendant, therefore, is alleged to have committed an unauthorized act that permanently deprived the plaintiff of its property interest. The second count alleges a cause of action for conversion. "Where property is subject to a security interest, any exercise of dominion or control over the property which is inconsistent with, or is in defiance or derogation of, the rights of the secured party constitutes a conversion of the property as to the secured party." 79 C.J.S. 555, Secured Transactions, § 126 (1995); see also 79 C.J.S., Secured Transactions, § 113. CT Page 9773
 IV
Finally, the defendant moves to strike count four in which the plaintiff alleges that the defendant's act of unfairly selling the vehicle parts without notice to the plaintiff and without reimbursing the plaintiff, constitutes a violation of CUTPA. The defendant argues that this count is legally insufficient to state a cause of action for violation of CUTPA because the plaintiff only alleges a single act by a party not in the business of making such transactions.
The plaintiff argues in opposition that insofar as the defendant is in the garage repair and towing business, it is also in the business of selling such vehicles when they are abandoned to it. The plaintiff reasons that the state's institution of regulations for a garage owner's sale of such vehicles confirms that such sales are in fact part of the defendant's business.
General Statutes § 42-110b (a) (CUTPA) provides: "`No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' In determining whether certain acts constitute a violation of this act, `we have adopted the criteria set out in the cigarette rule by the federal trade commission . . . (a) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]. . . ." (Citations and internal quotation marks omitted.) Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 591, 657 A.2d 212 (1995).
First, as I have previously written, I concur with the reasoning of those courts which have held CUTPA to be applicable to a single transaction which occurs in the conduct of any trade or commerce; Holeva v. M Z Associates, Superior Court, judicial district of New Haven, Housing Session, Docket No. 098403 (November 18, 1998); a matter about which there is little doubt.
Second, the defendant's argument that CUTPA should not apply to the defendant because the defendant is not in the business of CT Page 9774 selling abandoned automobiles is not well taken. The plaintiff alleges that the defendant is an automobile garage. A garage, as defined in General Statutes § 14-1 (28), "includes every place of business where motor vehicles are, for compensation, received for housing, storage or repair." The sale of automobiles, pursuant to General Statutes § 14-150 (g), is simply a remedy provided for the recovery of charges incurred by storing the automobiles. In short, it is sufficiently related to the business of a garage to be a "trade or commerce," within the meaning of CUTPA. The defendant's motion to strike count four is denied.
In conclusion, the defendant's motion to strike is granted as to count one. The defendant's motion to strike is denied as to counts two, three and four.
BY THE COURT
Bruce L. LevinJudge of the Superior Court