[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Winston Haynes claims that a lien recorded by the defendant town of East Windsor violated constitutional requirements of procedural due process; the town seeks to recover the claimed underlying debt. The facts are as follows.
In the late 1980's, the plaintiff Haynes and one Vilma Mansfield entered into a romantic relationship. In 1992, Haynes bought at a foreclosure sale the residence in the town of East Windsor where Mansfield lived; she continued to live there with approximately six children, of whom two Haynes apparently was the parent. Haynes moved in for a time in the early 1990's; in March, 1994, a family violence protective order was issued which prohibited Haynes from entering the residence.[1] The relationship having soured, he subsequently sought to evict Mansfield.
In September, 1995, Mansfield sought assistance for fuel payments in anticipation of the coming heating season. Indirectly in response to the request, through the local fire department, the East Windsor building official inspected the premises because of a report of high levels of carbon monoxide on September 18, 1995. He advised that the tenants not use the furnace. He returned three days later and the situation had not been addressed. The state Department of Environmental Protection was involved as well. Haynes was called about the problem and at first was reluctant to go to the premises, by his account because of the protective order. He ultimately did show up, and he diagnosed the problem as one easily and simply remedied. Haynes was a heating contractor by trade. He did not fix the problem at the time, however, and as a result, the premises were posted as unsafe and Ms. Mansfield and the children were relocated. Meanwhile, in the Housing Session of the Superior Court the parties worked out an agreement, whereby Haynes was to reimburse Mansfield for certain improvements she made to the premises, with credit for use and occupancy payments if the premises were occupied. The tenants were not to occupy the premises "unless and until the town of East Windsor CT Page 775 approves such occupancy. . . ." The agreement was signed on October 12, 1995.
Mansfield and the children were placed in a motel by the East Windsor Human Services Coordinator; they stayed in the motel for several months until they were relocated in a more permanent residence. The bill to the town, which included items such as phone bills and food expenses, amounted to $19,073.29 without interest. The town claims that Haynes, as the owner of property found to be in violation of code provisions, thus causing the dislocation, owes this amount, plus 18% interest, the same rate authorized by statute for the late payment of taxes, for a total approximating $40,000. The lien was signed by the defendant John Rajala, at the time the first selectman of the town, after having been presented to him by the human services coordinator.
During the fall of 1995, the town building official sent by certified mail notices of code violations to Haynes at an address where he no longer lived; Haynes did not receive the notices and the mail was returned undelivered to the town. On September 26, 1995, the state of Connecticut Department of Environmental Protection sent a notice regarding the need to work with the department to clean up a potential oil spill of sorts resulting from the furnace situation. There was never any notice sent to Haynes, whether or not received, regarding any claimed liability to reimburse the town for the living expenses of Mansfield and the children. On October 2, 1995, the town caused the aforementioned lien, pursuant to § 8-270 of the General Statutes, to be recorded against Haynes' property at 27 Morris Road in East Windsor. There was no specific amount mentioned in the lien. No notice of the lien was sent to Haynes.
Haynes found out about the lien several years later when he tried to refinance the property and a routine title search uncovered the lien. At that time, the defendant Roberts was first selectman, and, after inquiry to her by Haynes or his representative and by her to counsel, she refused to release the lien. Haynes was unable because of the lien to obtain the refinancing at that time, and he claims that as a result he was unable to purchase another fuel delivery truck which would have enabled him to secure a profitable contract with the city of Hartford. He ultimately did sell the property in 2001, and the amount of $40,000 from the proceeds has been placed in escrow pending the results of this action.
Haynes brought this civil rights action in 2001. The action was brought in four counts. The first count is brought against John Rajala and alleges that the lien was placed against his property without any notice having been provided to him and thus violated several constitutionally CT Page 776 protected rights. The second is brought against Linda Roberts and claims that her refusal to release the lien compounded the constitutional infirmity. The third is brought against the defendant town of East Windsor, and claims that the acts by Rajala and Roberts were done in their official capacities and that the town is therefore liable as well. The fourth count is brought against the town and seeks injunctive relief ordering the town to release the lien.
The defendants have pled several special defenses and a set-off. The defenses assert various forms of immunity and a failure to provide notice as required by § 7-465 of the General Statutes. The "set-off by way of counterclaim" alleges the debt owed to the town for the maintenance of Mansfield and the children.
I first address the constitutional issues alleged in the complaint. The right, in a general sense, of notice and an opportunity to be heard in the context of the imposition of liens has been established at least since 1969. See, e.g., Sniadach v. Family Finance Corp., 395 U.S. 337
(1969). The elements of a procedural due process claim are that (1) the property interest at stake is cognizable under the Due Process Clause[2]; (2) the person bringing the action has been deprived of that property right; and (3) the deprivation has been accomplished without due process of law. Double I Limited Partnership v. Plan Zoning Commission,218 Conn. 65, 76 (1991). The process that is due may depend, to a considerable degree, on the nature and extent of the deprivation. As a general proposition, a deprivation of property ordinarily requires notice reasonably calculated to apprise interested parties of the pendency of proceedings and an opportunity to present objections. See, e.g., MennoniteBoard of Missions v. Adams, 462 U.S. 791, 795 (1983); Fuentes v. Shevin,407 U.S. 67 (1972); Lynch v. Household Finance Corp., 405 U.S. 538
(1972); Dutch Point Credit Union, Inc. v. Caron Auto Works, Inc.,36 Conn. App. 123 (1994). On the basis of the foregoing cases, it is apparent that the encumbrance of property is a deprivation of a property interest ordinarily protected by the due process clauses of the federal and state constitutions, so that some notice and opportunity to be heard is usually constitutionally required.[3] Again, the sort of notice and opportunity is flexible, depending on the nature of the deprivation, any exigent circumstances, and other factors, but the case law has been clear for at. least thirty years that notions of due process apply.
The defendants maintain that the method of transferring costs to the landlord is historically justified because § 8-270, which is the statutory authority relied on in this instance, provides that a lien for relocation expenses "shall be filed, enforced and discharged in the same manner as a lien for municipal taxes under chapter 205." Chapter 205, in CT Page 777 turn, does not appear specifically to provide for a process such as that mandated by chapter 903a. A significant practical distinction is that the owner of property subject to taxation ordinarily receives notice of the assessment and of the rates, and later receives a tax bill, all prior to the imposition of any lien. Ordinarily such assessments are specifically subject to review at the request of the taxpayer. The process of collecting municipal taxes is very different from the process which occurred in the case at hand, where there was no notification of the lien[4] or of the underlying claimed debt.[5] Because fundamental tenets of procedural due process were not followed, I hold that § 8-270
of the General Statutes was unconstitutionally applied in this instance and that the plaintiff Haynes was deprived of a constitutionally protected property interest without due process.[6]
Several ancillary questions remain. First, the defendants have claimed qualified immunity personally and governmental immunity as a bar to recovery against the municipality. Part of the answer lies in the fact that the action is brought against the officials Rajala and Roberts in their official capacities only; if there was any doubt in the pleadings, the doubt was resolved by the plaintiff's assertion on the record during trial that the action was brought against the defendants in their official capacities only.[7] Because an action brought against defendants acting in their official capacities is functionally an action against the municipality itself; see, e.g., Monell v. New York CityDepartment of Social Services, 436 U.S. 658, 690 n. 55 (1978); the only issue regarding immunity, then, is whether the town of East Windsor is entitled to immunity.[8] It should initially be noted that because the actions taken were those of the chief executive officer of the town, the actions in the circumstances of this case constitute custom or policy of the municipality; policy may be found in a "statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers". DeLeon v. Little, 981 F. Sup. 728, 739 (D. Conn. 1997); seePembaur v. City of Cincinnati, 475 U.S. 469 (1986).[9] Additionally, liability may be imposed for a single event or decision by municipal policy-makers. Pembaur, supra, 740. Here, because the actions were taken as a policy matter by the chief executive, the requirements of Monell andPembaur have been satisfied. I find, then, that the allegations against Rajala and Roberts in their official capacities and the town on aMonell[10] basis (but not, of course, on a respondeat superior basis) proved.[11] Additionally, the plaintiff is entitled to injunctive relief returning the escrowed funds, because no notice was provided.
Damages are, however, a different problem. Haynes submitted evidence to the effect that he was denied a city of Hartford contract because he was not able to come up with the funds to procure another oil delivery CT Page 778 truck, and had the East Windsor property not been encumbered, he would have secured the funds. Suffice it to say that I find that evidence in this regard speculative, and I do not find monetary compensatory damages proved by a preponderance of the evidence. Similarly, I do not award punitive damages. Such are not to be awarded against municipalities or, of course, against individuals sued in their official capacities; see Cityof Newport v. Fact Concerts, Inc., 453 U.S. 247, 270 (1981); and in any event the circumstances, including reliance on statutory authority and advice of counsel, do not show a deliberate disregard for the rights of the plaintiff.
Because injunctive relief is granted, however, and even in the absence of such relief nominal damages may be appropriate, the plaintiff is entitled to a consideration of attorneys' fees pursuant to42 U.S.C. § 1988. A hearing will be scheduled for the determination of appropriate fees.
The defendants, of course, still claim that the debt is owed. I agree that the invalidity of a lien does not necessarily destroy the validity of an underlying debt, especially when the remedy of foreclosure is not elected. The claim, asserted by way of set-off or counterclaim, is, as noted above, for the amounts of approximately $19,000 in principal and a roughly equal sum as interest. It is important to note that the sole basis of the claim is the transfer of costs pursuant to §§ 8-268 and8-270 of the General Statutes and no other theory has been pled.
The difficulty with the claim is that §§ 8-268 and 8-270 are limited in scope. They do not purport to authorize a municipality to pay, and to transfer to a landlord in the case of a tenant forced to move because of code violations, all the living expenses of a displaced tenant. Rather, the town is authorized under these sections to pay the "actual reasonable expenses in moving himself, his family . . . or other personal property" (§ 8-268) and the "amount necessary to enable such displaced person to lease or rent for a period not to exceed four years, a decent safe, and sanitary dwelling of standards adequate to accommodate such person . . ., but not to exceed four thousand dollars. . . ." (Emphasis added). Section 8-270. There is no evidence of actual moving expenses. There is evidence of the amount required to house the family, and even if significant allowances are made for the items such as telephone bills and food expenses, it is apparent that the cost still far exceeds four thousand dollars. I find on the evidence that there were code violations and that the violations were a substantial factor in causing the expenses. I find for the town on the counterclaim; however, the amount is limited to the four thousand dollar cap imposed by statute. I do not award prejudgment interest on the counterclaim, because the lien was in CT Page 779 these circumstances invalid and, in the circumstances, I do not find that money was wrongfully withheld after any demand for $4,000. See § 37-3a
of the General Statutes.
In sum, the allegations of the complaint are proved, with the limitation that liability against defendants in their individual capacities has not been proved. No damages have been proved, but injunctive relief is appropriate. An order shall enter compelling the release of the escrowed amount of $40,000, which has been substituted for the lien recorded against the plaintiff's former premises. Damages of $4,000 are awarded on the counterclaim and shall be set off against the return of the escrowed amount. A hearing will be scheduled on the issue of attorney's fees.[12]
Beach, J.