THE DERBY SAVINGS BANK *v.* CHESTER KURKOWSKI
ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued February 8—decided May 4, 1967

*James C. Lyons,* with whom, on the brief, was *Carl A. Lundgren,* for the appellant (plaintiff).

*Leo Vine,* for the appellees (defendants).

*Benjamin Hinman* and *Theodore M. Space* filed a brief as amicus curiae but did not argue the cause.

RYAN, J. In this action, the plaintiff, the Derby Savings Bank, seeks to recover a sum of money paid by it, under protest, to the defendants, the city of Shelton and its tax collector, Chester Kurkowski, for certain personal property taxes. The parties having stipulated to all pertinent facts, no evidence was taken, and the trial court found as follows: On August 28, 1959, the Soundcrest Development Corporation mortgaged to the plaintiff bank certain real estate in the city of Shelton as security for a loan in the sum of $14,000. On December 31, 1959, Soundcrest conveyed the property to Walter F. and Helen V. Webb, subject to the mortgage, which the Webbs assumed and agreed to pay. On November 16, 1964, the plaintiff brought an action in the Court of Common Pleas to foreclose the mortgage, which action resulted in a judgment of strict foreclosure on February 5, 1965. The court found the indebtedness to be $13,123.05, and it fixed

the law day for September 21, 1965, for the Webbs, and succeeding days for subsequent encumbrancers. On April 29, 1965, subsequent to the judgment of foreclosure, but prior to the dates for redemption, the tax collector issued a notice entitled, "Notice of Levy of a Tax Warrant on Real Estate," which described the same property involved in the foreclosure proceedings. The tax collector claimed that there was due to the city of Shelton a total of $2024.75, which included, in addition to the real property taxes, interest and lien fees, the sum of $154.82 for personal property taxes and interest on two automobiles of Walter F. Webb for the years 1962, 1963 and 1964, plus certain other expenses. By virtue of the tax warrant, the tax collector advertised in a newspaper the sale of all the real estate for the satisfaction not only of the real estate taxes due from the Webbs on the premises in question but also for the personal property taxes owed by Walter F. Webb. The tax collector purported to act under General Statutes (Rev. to 1964) § 12-163, entitled "Jeopardy collection of taxes." On May 29, 1965, the plaintiff paid the full amount of the real estate taxes due, together with the personal property taxes on the automobile of Walter F. Webb. The payment of the personal property taxes, fees, and expenses was made under protest.

Thereafter, the plaintiff brought this action in the Circuit Court to recover the sum of money paid to the defendants for the personal property taxes and fees. The trial court rendered judgment for the defendants, and the plaintiff appealed to the Appellate Division of the Circuit Court, which affirmed the judgment of the trial court, holding that it was "perfectly proper for the tax collector to levy upon the entire mortgaged premises and

advertise their sale, under the jeopardy statute, to satisfy delinquent taxes on personal property not connected with the real estate after judgment of foreclosure and before the redemption date." Upon the granting of certification, the plaintiff appealed to this court.

The question to be determined in this court is whether § 12-163 of the General Statutes (Rev. to 1964) gives priority to unpaid personal property taxes of the mortgagor and owner of the equity of redemption, which were not connected with the realty, over the prior mortgage of the plaintiff. Since the plaintiff failed to pursue its claim as to the fees and expenses in its brief, this issue must be regarded as abandoned. *Kasowitz* v. *Mutual Construction Co.*, 154 Conn. 607, 612, 228 A.2d 149.

Before 1887, all lands owned by a person in any town were subject to a lien for the amount of all his taxes in that town. The statute then in effect provided as follows: "Real estate, owned by any person in fee, or for life, or for a term of years by gift or devise and not by contract, shall stand charged with his lawful taxes, in preference to any other lien, and may be sold for the same, and costs of collection, within one year after the taxes become due, notwithstanding any transfer thereof, or any levy of attachment or execution thereon; and shall, after the expiration of such year, and before any such transfer or levy, remain liable for the payment of such taxes and costs until paid; but no real estate, so transferred or levied upon, shall be sold for the payment of any taxes laid upon a list made after such transfer or levy, nor shall any real estate, legally transferred, attached, or taken by execution, be sold for taxes, when other estate can be found sufficient to pay them and the legal costs." Rev.

1875, p. 163 § 15. Interpreting the statute in 1880, we said: "This lien takes precedence of all others; mortgagees take their security with knowledge that the sovereignty must and will take by taxation all that is necessary to the preservation of its own life; the life of the State is of higher concern than the protection of a debt due to an individual member of it. Therefore every piece of real estate must contribute its fair proportion to the public treasury if the authorities move within a specified time and according to statutory methods; and this regardless of mortgagees or purchasers." *Albany Brewing Co.* v. *Meriden,* 48 Conn. 243, 247.

The statute was repealed in 1887 by an act which provided in part as follows: "The estate of any person in any portion of real estate which is by law set in his list for taxation shall be subject to a lien for that part of his taxes which is laid upon the valuation of said real estate as found in said list when finally completed." Public Acts 1887, c. 110 § 3. "This statute has been construed by us as imposing upon any single item of a person's real estate a lien for only that amount of his taxes which was assessed upon the valuation of such single item. *Meyer* v. *Burritt,* 60 Conn. 117, 124, 22 Atl. 501." *Phillips* v. *Sturm,* 91 Conn. 331, 336, 99 A. 689. After 1887, any piece of real estate which is by law set in the owner's tax list could be subject to a lien only for such part of the total taxes of the owner as was due on that particular piece.

The act of 1887, as amended at various times, is our present lien statute. "The interest of each person in each item of real estate, which has been legally set in his assessment list, shall be subject to a lien for that part of his taxes laid upon the valuation of such interest, as found in such list when

finally completed, as such part may be increased by interest, fees and charges. Such lien, unless otherwise specially provided by law, shall exist from the first day of October or other assessment date of the municipality in the year previous to that in which such tax, or the first instalment thereof, became due until one year after such tax or first instalment thereof became due and, during its existence, shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it. Such lien, during its existence, may be enforced by levy and sale of such real estate if such person has complete title thereto or of his interest in such real estate if he does not have complete title thereto. No sale of real estate for taxes or foreclosure of any lien shall divest the estate sold of any existing lien for other taxes." General Statutes (Rev. to 1964) § 12-172. The statute as it exists today requires no change in construction from that given it by this court in *Meyer* v. *Burritt,* supra, and *Phillips* v. *Sturm,* supra.

Connecticut statutes contain no lien provision similar to § 12-172 in the case of a tax laid upon personal property. "Such taxes may be collected by levy under §§ 1225 and 1232 of the [1930 Revision of the] General Statutes [now §§ 12-155 and 12-162], or by action as for the recovery of a debt under § 1231 [now § 12-161], but the property assessed is not subject to lien prior to the institution of such proceedings to enforce the collection of the tax. *Phillips* v. *Sturm,* 91 Conn. 331, 336, 99 Atl. 689; 3 Cooley, Taxation (4th Ed.) § 1233." *River Feldspar & Milling Co.* v. *Phelps,* 121 Conn. 246, 249, 184 A. 373.

In 1937, the legislature adopted the jeopardy collection statute (Cum. Sup. 1939, § 342e), the per-

tinent portion of which now reads as follows: "If, between the assessment date and the tax due date, any tax collector believes that the collection of any tax will be jeopardized by delay, he shall, subject to the provisions of this section, collect such tax forthwith. He may enforce collection thereof by using any one or more of the methods provided in sections 12-155, 12-161 and 12-162, or in any other section of the general statutes relating to the enforced collection of taxes." General Statutes (Rev. to 1964) § 12-163. The defendants relied on this statute and claimed that it provides authority to levy upon the entire mortgaged premises and advertise their sale to satisfy delinquent personal property taxes not connected with the real estate.

The trial court held that jeopardy collection applies to "any tax" and that this includes personal property taxes. This is correct. The statute, however, provides no new method of collection and does not provide for a lien. The tax collector may enforce collection by using any one or more of the methods provided in §§ 12-155, 12-161 and 12-162 of the General Statutes (Rev. to 1964). Section 12-162 concerns the alias tax warrant which is given to a sheriff or other officer to serve and collect taxes due. Section 12-161 provides for collection by suit. Neither of these methods was pursued by the defendant tax collector. Section 12-155, the other statute referred to in § 12-163, concerns demand and levy for the collection of taxes. "If any person fails to pay any tax, the collector or his duly appointed agent shall make personal demand of him therefor or leave written demand at his usual place of abode or deposit in some post office a written demand for such tax, postage prepaid, addressed to such person at his last-known place of residence. After demand

has been made in the manner above provided, the collector may levy for such tax on any goods and chattels of such person and post and sell them in the manner provided in case of executions; but, if no such goods or chattels belonging to such person can be found after reasonable search by the collector, he may enforce by levy and sale any lien upon real estate for such taxes, or he may levy upon and sell such interest of such person in any real estate as exists at the date of the levy, or he may levy on the body of such person and commit him to jail there to remain until he pays such tax and the legal costs or is discharged in due course of law." General Statutes (Rev. to 1964) § 12-155. The provision that the tax collector "may enforce by levy and sale any lien upon real estate for such taxes," has no application to personal property since there is no lien for such taxes until the tax collector levies under the provisions of this section. *River Feldspar & Milling Co.* v. *Phelps,* 121 Conn. 246, 249, 250, 184 A. 373. The statute also provides that the collector may "levy upon and sell such interest of such person in any real estate as exists at the date of the levy." The interest of the Webbs was that of the owners of the equity of redemption. Their interest was subject to all other liens and encumbrances which were prior in time to the levy of the tax collector for personal property taxes. The tax collector was limited to this interest and clearly had no statutory right to advertise the entire real property for sale for those taxes.

It should also be noted that the personal property taxes in question were for the years 1962, 1963 and 1964. The notice of levy of the tax warrant was dated April 29, 1965. Section 12-163 is designed to permit the collection of taxes which are assessed,

but not due, when the collector believes that their collection will be jeopardized by delay. Where the language of a statute is plain and unambiguous, the intent of the statute is to be determined from its language. *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525; *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70. Although there is nothing in the record to indicate the due date of the taxes for the year 1964, as determined by the city in accordance with § 12-142 of the General Statutes (Rev. to 1964), it is obvious that the taxes for the years 1962 and 1963 were already due at the time the notice of levy was issued. Therefore, as to the taxes for the years 1962 and 1963, § 12-163 does not apply in any event.

There is error, the judgments of the trial court and the Appellate Division are set aside and the case is remanded with direction to render judgment for the plaintiff to recover the sum of $154.82, with interest from the date of payment.

In this opinion the other judges concurred.