[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 24, 1996
The principal issue in this declaratory judgment action is whether due process requires that persons whose real estate is sold to pay delinquent taxes pursuant to General Statutes §12-157 must be afforded a hearing to challenge the commercial reasonableness of the sale. The court holds it does not.
The plaintiffs, Pace Motor Lines, Inc. (Pace) and WPRT Realty Company (WPRT), filed a complaint naming as the defendants, Lisa Biagiarelli, the Tax Collector of the Town of Stratford, and the Town of Stratford. WPRT owns property, known as 727 Honeyspot Road in Stratford, for which it owes the town $115,693.90 in real property taxes. The assessed value of the property far exceeds CT Page 4938 the amount of taxes owed. Pace owns property, known as 1425 Honeyspot Road Extension, for which it owes $376,928.10 in real property taxes. It also has an assessed value in excess of the taxes owed. On September 27, 1994, the defendants gave notice to WPRT and Pace that the properties would be sold at an auction on December 3, 1994, to satisfy the delinquent real property taxes, interest, and other charges.
In the first count of the complaint, the plaintiffs seek a declaratory judgment that the procedure implemented pursuant to General Statutes § 12-157 deprives them of their property without just compensation in violation of both the federal and state constitutions. In the second and third counts, the plaintiffs also seek injunctions against the defendants to prevent the threatened sale of their properties.
The plaintiff Fordham Realty, Inc. (Fordham) also has filed a complaint naming as defendants Lisa Biagiarelli and the Town of Stratford. Fordham owns the property known as 280 Ferry Boulevard in Stratford. On or about October 24, 1994, the defendants gave notice to Fordham that the property would be sold at an auction on December 3, 1994, to satisfy $98,949.78 in real property taxes, interest, and other charges. Again, the assessed value exceeded the amount owed. In the first count, Fordham alleges that the defendants, in violation of Connecticut General Statutes § 12-155, never made a reasonable search for any goods or chattels belonging to Fordham. In the second count, Fordham challenges the constitutionality of § 12-157. In the third count, Fordham alleges that the defendants violated 42 U.S.C. § 1983
(1988).[1] In the fourth count, the plaintiff seeks temporary and permanent injunctions against the sale of the real property.
The cases were consolidated for trial.[2] The parties filed a partial statement of stipulated facts. The defendants have agreed not to proceed with the public auction of any plaintiff s property pending the decision of this court.
 I
Preliminarily, a review of "[t]he following [statutory] background is in order." Sherbo v. Manson, 21 Conn. App. 172, 174,572 A.2d 378 (1990). "Section 12-64 of the General Statutes provides that real property, not exempted, is liable to taxation. While the statute lists the types of real property that are CT Page 4939 subject to tax, it includes basically all real estate and improvements on it." Fuller, Land Use Law and Practice (West 1993) § 45.2.[3] General Statutes § 12-62 provides for the periodic revaluation of real estate in each municipality.[4]
Generally, all property is to be assessed at a uniform rate of seventy per cent of present true and actual value; General Statutes § 12-62a(b); meaning "the fair market value thereof and not its value at a forced or auction sale." General Statutes § 12-63.[5] Any person claiming to be aggrieved by the action of the assessor may appeal his doings to the board of assessment appeals; General Statutes § 12-111;[6] and may appeal from the board of assessment appeals to the superior court. General Statutes § 12-117a.[7] Also, "[w]hen it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes . . . may, in addition to the other remedies provided by law, make application for relief to the superior court . . . within one year from the date as of which the property was last evaluated for purposes of taxation . . . In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains . . ." General Statutes § 12-119.
If the property tax on real estate is not timely paid, a lien arises on such property by operation of law for a period of one year commencing on October 1, or other assessment date of the municipality, in the year previous to that in which the tax or the first installment thereof became due. General Statutes §12-172.[8] The tax collector may "continue" the lien by filing a certificate in the office of the town clerk. General Statutes § 12-173;[9] see also General Statutes § 12-175.[10]
The tax collector may bring an action in the name of the municipality to foreclose tax liens. General Statutes §12-181;[11] see also General Statutes § 12-182 (in rem action for summary foreclosure of tax lien on real estate where fair market value thereof is less than the tax liens and other CT Page 4940 encumbrances so liened and is not more than $20,000).[12]
In addition, a tax collector may obtain a tax warrant from a proper officer "and the collector in person may demand and collect taxes in any part of the state on a proper warrant." General Statutes § 12-135;[13] see also General Statutes §§ 12-132 (form of tax warrant), 12-162 (alias tax warrant). "If any person fails to pay any tax, the collector . . . may levy for such tax on any goods and chattels of such person and post and sell them in the manner provided in case of executions, he may enforce by levy and sale any lien upon real estate for such taxes or he may levy upon and sell such interest of such person in any real estate as exists at the date of the levy." General Statutes § 12-155.
Moreover, General Statutes § 12-161 provides that taxes may be recovered by the municipality in a civil action for the recovery of a debt.[14]
The statutory method for collection of unpaid real estate taxes with which this case is concerned is the public auction, or "tax sale," pursuant to General Statutes § 12-157, as amended by Public Act No. 95-228 § 3.[15] Unlike a statutory tax foreclosure; General Statutes §§ 12-181, 12-182; or a civil action in debt to collect the tax; General Statutes § 12-161; a public auction of real estate pursuant to General Statutes § 12-157 is entirely extra-judicial.
 II
General Statutes § 52-29, the statutory authority for a declaratory judgment, provides that "[t]he superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." Practice Book § 390 provides that "[t]he court will not render declaratory judgment upon the complaint of any person: (a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or (b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; or (c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or (d) unless all persons having an interest in the CT Page 4941 subject matter of the complaint are parties to the action or have reasonable notice thereof."
Before addressing the merits of the plaintiffs' claims, it is appropriate to determine whether the court has jurisdiction and whether a declaratory judgment is appropriate. This is because after the notices of the tax sales of plaintiffs' property were issued by the tax collector, General Statutes § 12-157 was substantially amended by Public Acts No. 95-228, § 3. Moreover, the plaintiffs' real property has not yet been sold at auction and the plaintiffs have not yet sustained a loss. "[T]hat the issue of subject matter jurisdiction was not raised by either party in . . . this court is of no consequence. `The parties to an action cannot confer subject matter jurisdiction on the court by their consent, silence, waiver or private agreement.'Arseniadis v. Arseniadis, 2 Conn. App. 239, 242, 477 A.2d 152
(1984); see also Gianetti v. Norwalk Hospital, 211 Conn. 51,557 A.2d 1249 (1989)." (Footnote omitted.) AFL Associates v. ZoningCommission, 18 Conn. App. 542, 547, 559 A.2d 236 (1989).
The amending of General Statutes § 12-157 by Public Act No. 95-228, § 3 mooted certain issues raised by the plaintiffs. That amendment rendered moot the plaintiffs' claim that the notice provided by the statute was inadequate. The amendment also mooted the plaintiffs' claim that the statute did not provide for the payment to the property owner or other proper person of any surplus monies from a public auction of real estate in excess of the amount of taxes and fees owing. This court may not render a declaratory judgment as to moot issues which "are not of consequence as guides to the present conduct of the parties." Sigal v. Wise, 114 Conn. 297, 302, 158 A. 891 (1932). However, as long as one or more issues vital to the controversy between the parties are susceptible of authoritative resolution, the Superior Court may, and generally should, adjudicate the case. In re Validation of $7,800,000 Combined Utility System,465 So.2d 1003, 1015 (Miss. 1985).[16]
The two principal remaining issues in this action are the construction of General Statutes § 12-155, as that statute relates to General Statutes § 12-157, and the constitutionality of General Statutes § 12-157 on its face, in light of the unavailability of any mechanism in the statutory scheme for judicial review of the adequacy of the price at which real estate is sold at public auction. The claim of the plaintiffs with respect to General Statutes § 12-155 is that CT Page 4942 the tax collector must first levy upon the goods and chattels of a delinquent taxpayer before selling his real estate. The claim of the plaintiffs with respect to the constitutionality of General Statutes § 12-157 is that, as a matter of procedural due process, there must be a statutory mechanism whereby they may set aside a sale of their real estate at public auction for a price which is not commercially reasonable.
We begin by acknowledging that "`[t]he statute authorizing the Superior Court to render declaratory judgments is as broad as it well could be made.' Sigal v. Wise, 114 Conn. 297, 301,158 A. 891 [1932]. It antedated the Uniform Declaratory Judgments Act, it is broader than that act and the statutes in most, if not all, other jurisdictions; Spector Motor Services, Inc. v. Walsh,
[135 Conn. 37, 61 A.2d 89 (1948)]; and `[w]e have consistently construed our statute and the rules under it in a liberal spirit, in the belief that they serve a sound social purpose.'Connecticut Savings Bank v. First National Bank Trust Co.,133 Conn. 403, 409, 51 A.2d 907 [1947]." Horton v. Meskill, 172 Conn. 615,626-27, 376 A.2d 359 (1977). "As w[as] noted in Horton v.Meskill, [supra, 172 Conn. 626-27], an action for a declaratory judgment is a particularly appropriate vehicle for litigating otherwise justiciable constitutional issues." Maloney v. Pac,183 Conn. 313, 323, 439 A.2d 349 (1981); see Bombero v. Planning Zoning Commission, 40 Conn. App. 75, 79, 669 A.2d 598 (1996). It would unduly lengthen this opinion to catalogue all of the reported cases in which declaratory judgment procedure has been used to obtain a judicial declaration of the proper construction of a statute or statutory scheme. Indeed, declaratory judgment procedure has been recognized as an appropriate vehicle by which to obtain a judicial determination of the proper construction of tax statutes. See, e.g., Pepin v. Danbury, 171 Conn. 74,368 A.2d 88 (1976) (action for a declaratory judgment determining whether the tax formula of the named defendant, and the levy of taxes pursuant thereto, is valid); Kellems v. Brown, 163 Conn. 478,313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S.Ct. 911,34 L.Ed.2d 678 (1973) (action for a declaratory judgment concerning the construction and the constitutionality of a statute imposing a tax on dividends and capital gains); Spector Motor Service,Inc. v. Walsh, 135 Conn. 37, 39, 61 A.2d 89 (1945) (declaratory judgment as to the validity and construction of the Corporation Business Tax Act of 1935, Cum.Sup. 1935, Chap. 66b, § 416c et seq., as amended, with reference to a corporation engaged in interstate motor freight service). CT Page 4943
However, "`[i]t is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment.' (Internal quotation marks omitted.) Connecticut Business Industry Assn.,Inc. v. Commission on Hospitals Health Care, 218 Conn. 335,346, 589 A.2d 356 (1991); see Practice Book § 390(a) and (b). `A party pursuing declaratory relief must . . . demonstrate, as in ordinary actions, a "justiciable right" in the controversy sought to be resolved, that is, "contract, property or personal rights . . . as such will be affected by the [court's] decision.'" Connecticut Business Industry Assn., Inc. v.Commission on Hospitals Health Care, supra, 348, quoting McGeev. Dunnigan, 138 Conn. 263, 267, 83 A.2d 491 (1951). `When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded.' Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483,492, 400 A.2d 726 (1978).
"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. Cf. Zoning Board of Appeals v. Planning ZoningCommission, 27 Conn. App. 297, 605 A.2d 885 (1992). `The fundamental test for determining aggrievement encompasses a well-settled two-fold determination: first, "the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]."' Mystic Marinelife Aquarium, Inc. v. Gill,
supra, 175 Conn. 493, quoting Nader v. Altermatt, 166 Conn. 43,51, 347 A.2d 89 (1974). `The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact.' Mystic Marinelife Aquarium,Inc. v. Gill, supra, 493. . . . Where a plaintiff lacks standing to sue, the court is without subject matter jurisdiction.Tomlinson v. Board of Education, 226 Conn. 704, 717, 629 A.2d 333
(1993)." (Footnotes omitted.) Steeneck v. University ofBridgeport, 235 Conn. 572, 578-579, 668 A.2d 688 (1995).
The partial stipulation of facts states that Fordham's real CT Page 4944 property "contains improvements consisting of a boat marina, repair facility and supplies store." From this and other evidence adduced at trial, the court finds that in addition to real estate Fordham owns personal property. Therefore, Fordham has standing to assert its claim that the defendant failed to make a reasonable search for goods or chattels belonging to Fordham pursuant to General Statutes § 12-155 before resorting to a public auction of Fordham's real estate for taxes.
The court also finds that all parties have standing to challenge the constitutionality of General Statutes § 12-157
on the grounds that it deprives persons whose property is the subject of a tax sale of procedural due process. A declaratory judgment as to this issue is proper at this time. The equity of the plaintiffs in their property sought to be sold far exceeds the taxes owed. But for the agreement of the defendants to refrain from proceeding with the public auctions until the decision of this court, the defendants would auction the plaintiffs' property pursuant to General Statutes § 12-157. While the court cannot forecast whether such a sale would be commercially reasonable, such forced sales virtually always result in a greatly diminished purchase price. It is not a particular sales price which the plaintiffs claim denies them of due process but the wholesale absence of any judicial review of the sale. This is not a contingent event: the statute provides for no judicial intervention at any time. Moreover, for the court to await such a sale before entertaining a declaratory judgment would necessarily embroil the innocent purchaser in this litigation and require that he await the court's judgment before determining whether he has obtained good title.
"`One great purpose [of a declaratory judgment action] is to enable parties to have their differences authoritatively settledin advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of law suits. Fully to carry out the purposes intended to be served by such judgments, it is sometimesnecessary to determine rights which will arise or become completeonly in the contingency of some future happening. Even if theright claimed . . . is a contingent one, its presentdetermination may well serve a very real practical need of theparties for guidance in their future conduct. A construction of our statute and rules which would exclude from the field of their CT Page 4945 operation the determination of rights, powers, privileges and immunities which are contingent upon the happening or not happening of some future event would hamper their useful operation.' . . . Sigal v. Wise, 114 Conn. 297, 301-02,158 A. 891 (1932)." (Emphasis in original.) Bombero v. Planning ZoningCommission, supra, 40 Conn. App. 79. "While the declaratory judgment procedure may not be utilized merely to . . . secure the construction of a statute if the effect of that construction will not affect a plaintiffs personal rights; Gannon v. Sanders,157 Conn. 1, 9, 244 A.2d 397; it may be employed in a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement, and where all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof. Practice Book § 309." Horton v.Meskill, supra, 172 Conn. 627.
Therefore, the plaintiffs have standing to assert the issues here and the court has jurisdiction. There is a practical need for a declaratory judgment. All of the requirements of Practice Book § 390 have been satisfied, and the court may address the merits of the parties' claims.
 III
Fordham claims that the defendants did not comply with the statutes in attempting to sell real estate to collect on personal property taxes. At the time of the commencement of this action, General Statutes § 12-155 provides in relevant part: "After demand has been made in the manner above provided, the collector may levy for such tax on any goods and chattels of such person and post and sell them in the manner provided in case of executions; but, if no such goods or chattels belonging to suchperson can be found after reasonable search by the collector, he may enforce by levy and sale any lien upon real estate for such taxes, or he may levy upon and sell such interest of such person in any real estate as exists at the date of the levy." (Emphasis added.) Fordham claims that a search for goods or chattels is required by § 12-155 before the defendants seek to publicly auction its real estate for taxes due, and that the defendants failed to introduce any evidence of such a search. Such a claim was made and rejected by the Supreme Court in Ives v. Lynn,7 Conn. 505, 512-13 (1829), "which, despite its venerable age, is the controlling precedent." American Trading Real EstateCT Page 4946Properties, Inc. v. Trumbull, 215 Conn. 68, 72, 574 A.2d 796
(1990).[17] Moreover, during the pendency of this action, the General Assembly amended General Statutes § 12-155 to, inter alia, delete the provision italicized in the portion of the statute quoted above. Public Act No. 95-228, § 2. The statutory linchpin for Fordham's argument has, therefore, been eliminated, leaving no question but that the claim that a tax collector must first levy on and sell a delinquent taxpayer's goods and chattels before resorting to a tax sale of real property is without merit.
 IV
Biagiarelli seeks to sell Pace's real estate, pursuant to General Statutes § 12-157, not only to collect delinquent real estate taxes but also to collect delinquent personal property taxes for which the real estate has not been liened. Pace claims that a tax collector may not do this. This court disagrees.
General Statutes § 12-155, as amended by Public Act No. 95-228, § 2, provides in relevant part: "If any person fails to pay any tax, the collector or his duly appointed agent shall make personal demand of him therefor . . . After demand has been made in the manner provided in this section, the collector may levy for such tax on any goods and chattels of such person and post and sell them in the manner provided in case of executions, he may enforce by levy and sale any lien upon real estate for such taxes or he may levy upon and sell such interest of suchperson in any real estate as exists at the date of the levy."
(Emphasis added.)
This statute provides a tax collector with three means by which to collect "any tax." First, the collector may levy on the tax debtor's goods and chattels and sell them. Second, the collector may sell any real estate which has been liened for taxes. This option, on which the plaintiffs focus, would apply to real estate taxes, as to which a lien arises by operation of law upon delinquency, for one year from the date of assessment; General Statutes § 12-172; and which may be continued by filing a certificate in the office of the town clerk. General Statutes § 12-173; see also General Statutes § 12-175. While there now is a statutory scheme for perfecting a lien on personal property for unpaid personal property taxes; General Statutes §§ 12-195a to 12-195h; the Connecticut statutes CT Page 4947 contain no lien provisions similar to §§ 12-172, 12-173,12-175. See Derby Savings Bank v. Kurkowski, 155 Conn. 60, 65,230 A.2d 26 (1967) (discussing the statutory history of §12-172). Third, the collector may levy upon and sell the interest of the tax debtor in any real estate as that interest exists at the date of the levy. The availability of this option as a vehicle to collect personal property taxes was recognized in Derby SavingsBank v. Kurkowski, supra, 67-68.
"Where the language of a statute is plain and unambiguous, the intent of the statute is to be determined from its language."Id., 68. "In construing a statute, no clause, sentence or word shall be treated as superfluous, void or insignificant unless there are compelling reasons why this principle cannot be followed." International Business Machines Corp. v. Brown,167 Conn. 123, 135, 355 A.2d 236 (1974). Pursuant to General Statutes § 12-155, the defendants may sell real property pursuant to General Statutes § 12-157 to collect personal property taxes.
 V
The court now addresses the plaintiffs' claim that General Statutes § 12-157 deprives them of property without due process of law because it does not provide for judicial review of what, the plaintiffs claim, must be a commercially reasonable tax sale.
"The fourteenth amendment to the United States constitution provides that the State [shall not] deprive any person of life, liberty, or property, without due process of law . . ." (Internal quotation marks omitted.) Frillici v. Westport, 231 Conn. 418,437, 650 A.2d 557 (1994).[18] "The [plaintiffs'] claim is one of procedural due process: the right to a meaningful hearing at a meaningful time." (Emphasis in original.) New England SavingsBank v. Lopez, 227 Conn. 270, 276, 630 A.2d 1010 (1993). "To determine whether such procedural due process requirements apply, the court must first determine whether a party has been deprived of liberty or property by some action of the government. . ." NewHaven v. United Illuminating Co., 168 Conn. 478, 494,362 A.2d 785 (1975).[19]
The plaintiffs cannot and do not claim that they will be deprived of liberty by the operation of General Statutes §12-157. They do claim that the statute deprives them of property. Therefore, in order to prevail on their procedural due process CT Page 4948 claim, the plaintiffs must show that (1) their property interests are cognizable under the due process clause, (2) they have been or will be deprived of that property interest, and (3) the deprivation of the property interest has occurred, or will occur, without due process of law. Dutch Point Credit Union v. CaronAuto Works, 36 Conn. App. 123, 130, 648 A.2d 882 (1994).
"The [United States Supreme] Court has . . . made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."Board of Regents v. Roth, 408 U.S. 564, 571-72, 92 S.Ct. 2701,33 L.Ed.2d 548 (1972). "[P]roperty interests . . . may take many forms." Id., 576. "Thus, the Court has held that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. Goldberg v. Kelly, 397 U.S. 254. SeeFlemming v. Nestor, 363 U.S. 603, 611. Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions,Slochower v. Board of Education, 350 U.S. 551, and college professors and staff members dismissed during the terms of their contracts, Wieman v. Updegraff, 344 U.S. 183, have interests in continued employment that are safeguarded by due process . . . [T]he Court [has] held that this principle `proscribing summary dismissal from public employment without hearing or inquiry required by due process' also applied to a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment. Connell v.Higginbotham, 403 U.S. 207, 208." (Footnote omitted.) Id.,
576-77.
"Certain attributes of `property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
"Property interests, of course, are not created by the CT Page 4949 Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, supra, 408 U.S. 577; see Hunt v. Prior, 236 Conn. 421, 436-38, 673 A.2d 514 (1996). InMennonite Board of Missions v. Adams, 462 U.S. 791,103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), a mortgagee's recorded lien in real property had been extinguished under Indiana law by virtue of a tax sale and expiration of the redemption period. The mortgagee sued the current owner, arguing that its rights to due process had been violated because (1) it had not received constitutionally adequate notice of the pending tax sale, and (2) it had not received notice of the opportunity to redeem the property following the tax sale. Id., 795. The Indiana courts upheld the statutory notice of the tax sale to the known mortgagee. The Mennonite court explained that the case was controlled by the holding in Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), that "prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of theFourteenth Amendment, a State must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Internal quotation marks omitted.) Mennonite Board of Missions v. Adams, supra,462 U.S. 799. The court held that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale . . . The tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors . . . Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." Id., 798.[20]
If a mortgagee has a legally protected property interest in connection with a tax sale, certainly the owner of property does so.[21] However, Mennonite held only that a mortgagee had a right "to notice reasonably calculated to apprise him of a pending tax sale." It did not hold that a mortgagee or property owner is entitled to a "hearing" at the tax sale nor to judicial review of the price at which the property sold at the auction.
Here, the plaintiffs contend that they are entitled to have their property sold at the tax sales in a "commercially CT Page 4950 reasonable" manner at a "commercially reasonable" price, and that as a matter of due process, they are entitled to judicial review to ensure that this is accomplished. The plaintiffs' ownership interest in their property is alone insufficient to support such a due process claim. Cf. New England Savings Bank v. Lopez,supra, 227 Conn. 276-77. Rather, the plaintiffs must have "an underlying substantive entitlement or protected property interest" in having their properties sold in a "commercially reasonable" manner at a "commercially reasonable" price as a predicate for their claim that General Statutes § 12-157
denies them procedural due process by not providing for judicial review of the price at which property sells at a tax sale. Id.,
276. Otherwise stated, the Constitution does not require opportunity for a hearing before a judicial tribunal unless the plaintiffs can show that the price at which their property would sell at a tax sale would deprive them of a "property" interest or a substantive due process entitlement. Board of Regents v. Roth,supra, 408 U.S. 564; Perry v. Sindermann, 408 U.S. 593, 599,92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, supra,408 U.S. 577; accord, Butner v. United States, 440 U.S. 48, 55,99 S.Ct. 914, 59 L.Ed.2d 136 (1979); Board of Curators,University of Missouri v. Horowitz, 435 U.S. 78, 82,98 S.Ct. 948, 55 L.Ed.2d 124 (1978); Hortonville Dist. v. HortonvilleEducation Assn., 426 U.S. 482, 497, 96 S.Ct. 2308, 49 L.Ed.2d 1
(1976).
The plaintiffs claim that due process requires a judicial hearing to determine whether a tax sale was "commercially reasonable." They seek to import the doctrine of commercial reasonableness into General Statutes § 12-157 from Article 9 of the Uniform Commercial Code, specifically from General Statutes §§ 42a-9-504, 42a-9-507(2). Section 42a-9-504(1) provides in relevant part that "[a] secured party after default may sell, lease or otherwise dispose of any or all collateral in its then condition or following any commercially reasonable preparation or processing." General Statutes § 42a-9-504(3) provides that "[d]isposition of the collateral may be by public or private proceedings and may be made by way of one or more CT Page 4951 contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." After a commercially reasonable sale, a secured creditor may be entitled to a deficiency judgment measured by the net proceeds of the sale. New England Savings Bank v. Lopez, supra, 227 Conn. 281. General Statutes § 42a-9-507(2) provides: "[T]hat a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable."
The Uniform Commercial Code does not define commercial reasonableness. May v. Women's Bank, N.A., 807 P.2d 1145, 1146n. 2, 14 UCCRS 2d 26 (Colo. 1991). "While not capable of precise definition, the phrase `commercially reasonable' . . . means that the . . . disposition of the [property] must be made in a good faith attempt to accomplish disposition to the parties' mutual best advantage. Central Budget Corporation v. Garrett, 48 App.Div. 825,368 N.Y.S.2d 268 (1975)." FW Welding Service, Inc. v.Pen-Smith, Inc., 38 Conn. Sup. 455, 457-58, 451 A.2d 286
(App.Sess. 1982).
Some support for the plaintiffs' claim that a tax sale must be conducted in a commercially reasonable manner is found inTownsend Savings Bank v. Todd, 47 Conn. 190 (1879). That case was an action in ejectment. The defendants claimed that they had title to the disputed property derived from George W. Jones. Jones had obtained title by a deed from the tax collector, Tuttle, as a result of a tax sale held pursuant to General CT Page 4952 Statutes (Rev. 1875), Title 164, § 17, a statutory predecessor to General Statutes § 12-157.[22] At the auction sale the collector requested that Jones, who was attending as a bidder and who bought that portion of the property which was sold, not bid on the property because the tax collector desired that another bidder have the property. The trial court "however found that the collector in saying this was acting in good faith." Id., 215. On appeal, the supreme court stated: "It is difficult to see how such a thing could be done in good faith, but we suppose the finding to mean that he had no actual intent to commit a fraud. The act was one however which the law would look upon as a gross violation of duty, and no ignorance of his duty on the part of the collector, or absence of a positively fraudulent intent, can excuse it. The collector was proceeding to sell the property of a taxpayer for his taxes — a power necessarily given to the cities and towns of the state, and vital to the existence of government, but one that should be exercised by the agents of the law with the utmost fairness, and with constant regard both to the requirements of the law and to the rights of the taxpayer; and any act on the part of the officer empowered to make such a sale which tends to prevent a fair competition at the auction, ought to render the sale void. . . . It is clear that here was an officer of the law, entrusted with this most responsible and delicate duty, interesting himself in preventing a fair sale that a certain person who wanted to secure the property might get it below its value Such a thing the law will never tolerate." Id., 215-16.
This holding is consistent with the interpretation of commercial reasonableness as requiring more than mere subjective good faith. "The difference between good faith and reasonable efforts is the difference between a subjective and an objective standard . . . [The Uniform Commercial Code as codified in] General Statutes § 42a-1-201(19) defines `[g]ood faith' as `honesty in fact in the conduct or transaction concerned.' Under the UCC definition, `good faith' is a subjective standard. It involves a determination of the intent or state of mind of the party concerned, taking into account the actual knowledge of the person as well as his or her motives. Funding Consultants, Inc.v. Aetna Casualty Surety Co., 187 Conn. 637, 642-44,447 A.2d 1163 (1982)." Phillipe v. Thomas, 3 Conn. App. 471, 474-75,489 A.2d 1056 (1985). "Both the language of other sections of the Code and the Code's drafting history incontrovertibly demonstrate that this standard is one that imposes no duty of due care . . . The test is honesty in fact rather than negligence." (Footnotes CT Page 4953 omitted.) Funding Consultants, Inc. v. Aetna Casualty SuretyCo., 187 Conn. 637, 642-43, 447 A.2d 1163 (1982). "Reasonableness, on the other hand, is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. See, e.g., Scribner v. O'Brien,Inc., 169 Conn. 389, 400, 363 A.2d 160 (1975); Calamari 
Perillo, Contracts (2d Ed.) 3-10." Phillipe v. Thomas, supra,3 Conn. App. 475. Under the tax sale statute, as construed by theTownsend Savings Bank court, a tax collector must do more than act in good faith; his actions must comport with the requirements of the law.
Even though the principles enunciated in Townsend SavingsBank v. Todd, supra, 47 Conn. 215-16, are not inconsistent with the requirements of a commercially reasonable sale, the doctrine of commercial reasonableness cannot be impressed onto the tax sale statute.
First, there is no evidence that the legislature intended that a tax sale pursuant to General Statutes § 12-157 be conducted in a commercially reasonable manner, as that term of art has developed under the UCC. "The basic goal of statutory construction is to determine and give effect to the apparent intent of the legislature. Ruskewich v. Commissioner of RevenueServices, 213 Conn. 19, 23-24, 566 A.2d 658 (1989); TexacoRefining Marketing Co. v. Commissioner, 202 Conn. 583, 589,522 A.2d 771 (1987). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment [and] to the legislative policy it was designed to implement . . . [Texaco Refining Marketing Co. v. Commissioner, supra]; Phelps Dodge CopperProducts Co. v. Groppo, 204 Conn. 122, 128, 527 A.2d 672 (1987);Kellems v. Brown, 163 Conn. 478, 502-03, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S.Ct. 911, 34 L.Ed.2d 678
(1973). Ruskewich v. Commissioner of Revenue Services, supra,
24." (Internal quotation marks omitted.) Bannon v. Schwartz,215 Conn. 633, 642, 577 A.2d 1025 (1990). Nothing in the text, legislative history[23] or other circumstances surrounding the comprehensive revision of General Statutes § 12-157 in 1995 by Public Act No. 95-228 § 3 suggests that the legislature intended to impose on the tax collector the duty to sell property for which taxes were owing in a commercially reasonable manner.[24]
CT Page 4954
It is true that "[i]n other contexts, `we have previously used statutes as a useful source of policy for common law adjudication, particularly if there was a close relationship between the statutory and common law subject matters.' Fahy v.Fahy, supra, 227 Conn. 514; accord New England Savings Bank v.Lopez, 227 Conn. 270, 281, 630 A.2d 1010 (1993); Hamm v. Taylor,180 Conn. 491, 495, 429 A.2d 946 (1980); Canton Motorcar Works,Inc. v. DiMartino, 6 Conn. App. 447, 453, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986)." Williams Ford, Inc.v. Hartford Courant Co., 232 Conn. 559, 585, 657 A.2d 212 (1995). Indeed, the supreme court has recognized "the Uniform Commercial Code . . . as a source of legislative policy for real property transactions. See, e.g., Olean v. Treglia, 190 Conn. 756, 762,463 A.2d 242 (1983); Conference Center Ltd. v. TRC, 189 Conn. 212,225, 455 A.2d 857 (1983); Hamm v. Taylor, 180 Conn. 491,494-95, 429 A.2d 946 (1980)." New England Savings Bank v. Lopez,supra, 227 Conn. 281. The doctrine is inapplicable here. The plaintiffs do not seek to apply a statutory doctrine to a common law adjudication. Rather, they seek to have this court read into one statute the provisions of another, unrelated statute. The doctrine of looking to legislative enactments as a source of policy for consistent common law development has never been applied in this manner, despite the opportunity to do so. SeeFahy v. Fahy, 227 Conn. 505, 509-16, 630 A.2d 1328 (1993).
Second, the requirement that the sale of collateral by a secured party be commercially reasonable is interrelated with other rights, duties and opportunities contained in Article 9 of the UCC. Prior to the sale, "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." General Statutes § 42a-9-503. During the period between default or repossession and the sale of the collateral, the secured party must take reasonable measures to guard the collateral from physical harm. Bank Josephine v. Conn.,599 S.W.2d 773, 775, 28 UCCRS 1226 (Ky.App. 1980); 9A Anderson, Uniform Commercial Code (3d Ed.) § 9-504:67. The secured party also may, and if commercially reasonable must, prepare the collateral for sale. 9A Anderson, Uniform Commercial Code (3d Ed.) § 9-504:68; Farmers Merchants Bank v. Barnes, 17 Ark. App. 139,705 S.W.2d 450, 452-53, 42 UCCRS 1884 (1986); ConnexPress, Inc. v. International Airmotive, Inc., 436 F. Sup. 51, 57, 22 UCCRS 1310 (D.D.C. 1977), affirmed, 574 F.2d 636 (1977);Liberty Nat. Bank Trust Co. v. Acme Tool Division of RuckerCo., 540 F.2d 1375, 1381, 19 UCCRS 1288 (10th Cir. 1976); Weissv. Northwest Acceptance Corp., 274 Or. 343, 546 P.2d 1065, 1072, CT Page 4955 19 UCCRS 348 (1976); Franklin State Bank v. Parker, 136 N.J. Super. 476,346 A.2d 632, 634-35, 18 UCCRS 266 (1975). Whether a sale of collateral pursuant to Article 9 of the Uniform Commercial Code is commercially reasonable may involve a constellation of factors. Topeka Datsun Motor Co. v. Stratton,12 Kan. App. 2d 95, 736 P.2d 82, 86 (1987); Scharf v. BMG Corp.,700 P.2d 1068, 1070-71 (Utah 1985).[25] But whether a sale has been commercially reasonable "[g]enerally . . . requires evidence of such things as the amount of advertising done, the number of people contacted, normal commercial practices in disposing of the particular collateral, the length of time between the repossession and the sale, whether any deterioration in the collateral has occurred, the number of bids received, and the price obtained." Connecticut Bank Trust Co. v. Incendy,207 Conn. 15, 28, 540 A.2d 32 (1988); see Gaynor v. Union Trust Co.,216 Conn. 458, 478, 582 A.2d 190 (1990). Unlike a secured party who sells collateral pursuant to § 42a-9-504, a tax collector who sells property for taxes pursuant to General Statutes §12-157 generally may not, as a practical matter, take possession of the property and therefore has no right or duty to guard the collateral prior to sale from physical harm or to prepare the property for sale.[26] It would be anomalous to impose on the tax collector the duty to sell property in a commercially reasonable manner when, in reality, he is without the tools to discharge that obligation.
That the plaintiffs have no substantive due process right to a commercially reasonable tax sale of their properties is dispositive of their claim that § 12-157 denies them procedural due process since they have articulated no other property or other substantive due process right of which they could be deprived. However, even if the court were to read into § 12-157 the requirement that a tax sale be commercially reasonable by implication, the statute would not be violative of procedural due process for several reasons.
First, the procedural due process requirement for a hearing applies only where a governmental body or official has engaged, or should have engaged, in factfinding. Mathews v. Eldridge,424 U.S. 319, 344, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("procedural due process rules are shaped by the risk of error inherent in the truthfinding process . . .").[27] In a tax sale pursuant to General Statutes § 12-157 the tax collector does not find facts, other than the fact of non-payment of taxes. See Legg, William J., "Tax Sales and the Constitution," 20 Okla. L. Rev. CT Page 4956 365, 374 (1967). He merely follows the statutory procedure laid out for the sale of real property. The power to sell land for delinquent taxes is strictly construed; the tax collector must substantially, if not strictly, comply with all statutory provisions. 85 C.J.S., Taxation, §§ 745, 746, 798, 799 (1954); 72 Am.Jur.2d, State and Local Taxation, § 931 (1974). Where a governmental official or body executes a ministerial duty, there is no need for a hearing. Connecticut Health Facilities v. ZoningBoard, 29 Conn. App. 1, 6-7, 613 A.2d 1358 (1992). Indeed, in connection with the tax sale the tax collector is vested with no discretion save for the authority, albeit "for any reason," to "adjourn such sale from time to time . . ." This, however, merely is incidental to the ministerial duty to conduct a fair sale in a responsible manner, in accordance with the dictates of TownsendSavings Bank, supra, 47 Conn. 190. See also Blossom v. RailroadCo., 70 U.S. (3 Wall.) 196, 209, 18 L.Ed. 43 (1865); Mower v.Bohmke, 9 Utah 2d 52, 337 P.2d 429, 430 (1959); Weinfield v.Cocke, 60 S.W.2d 842, 844 (Tex.Civ.App. 1933), affirmed, 127 Tex. 353,92 S.W.2d 1017 (1936).
Even if the tax collector were to misuse his authority and subvert the fairness of the tax sale, this would not render General Statutes § 12-157 violative of procedural due process. Rather, the plaintiffs' remedy would be a common law action, such as an action for a declaratory judgment and injunction. General Statutes § 52-483;[28] see also Newtonv. Schott, 87 Conn. 142, 87 A. 271 (1913) (action to set aside tax levy and sale of real estate and deed); Townsend Savings Bank v.Todd, supra, 47 Conn. 190 (action for ejectment); see also CurtisBuilding Co., Inc. v. Tunstall, 36 Pa.Cmmw. 233, 387 A.2d 1370,1371-72 n. 2 (1978) (if statutory remedy inadequate, action in equity to enjoin tax sale would lie; statute not unconstitutional).[29] As the United States Supreme Court has observed, "there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against "State" deprivations of property; in the latter situation, however, even though there is action "under color of" state law sufficient to bring the amendment into play, the state action is not necessarily complete. For in a case such as this the law of [the state] provides, in substance, that the plaintiff is entitled to be made whole for any loss of property occasioned by the unauthorized conduct of [a state official]." Parratt v.CT Page 4957Taylor, 451 U.S. 527, 542, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), quoting then Judge, later Justice, Stevens writing for the panel in Bonner v. Coughlin, 517 F.2d 1311, 1319 (7th Cir. 1975), modified en banc, 545 F.2d 565 (7th Cir. 1976), cert. denied,435 U.S. 932 (1978).
Second, the court disagrees with the plaintiffs' argument that New England Savings Bank v. Lopez, supra, 227 Conn. 270, supports their claim that the requirement of commercial reasonableness must be read into the tax sale statute. "The principal issue" in Lopez was "whether General Statutes §49-28, which establishes the procedures governing deficiency judgments following foreclosures by sale is unconstitutional under the due process clause of the United States constitution because it does not provide an evidentiary hearing to determine the fair market value of the foreclosed property for purposes of calculating the amount of the deficiency." (Footnote omitted.)Id., 272. The defendants claimed a substantive due process entitlement in the fair market value of their property which was being foreclosed. The supreme court found no basis for such a claim under state law, specifically under General Statutes §49-28. The court then went on to state: "We find confirmation for this construction of 49-28 in the parallel provision of the Uniform Commercial Code, which we have recognized as a source of legislative policy for real property transactions. . . Under General Statutes § 42a-9-504(2), it is clear that, after a commercially reasonable sale, a secured creditor is entitled to a deficiency judgment measured by the net proceeds of the sale in accordance with 42a-9-504(1) . . . General Statutes §42a-9-507(2) is even more illuminating, because it provides that a disposition of secured collateral is conclusively deemed to have been commercially reasonable if it has been approved in a judicial proceeding. A ruling that § 49-28 is constitutionally flawed because it does not permit the mortgagor to establish that the sale proceeds do not equal the property's `fair market value' would imperil these provisions of the Uniform Commercial Code as well. Consequently, we decline to travel that imprudent path." (Footnotes and citations omitted.) Id., 281-82.
The plaintiffs appear to argue that this language in Lopez
supports inferentially the proposition that all statutorily compelled sales of property must be commercially reasonable. Clearly, this is not what the Supreme Court said. Rather the court simply said that a holding that a deficiency judgment under § 49-28 must, as a matter of due process, be measured by the CT Page 4958 fair market value of the property being foreclosed would constitutionally imperil General Statutes § 42a-9-504(1) which provides that a secured creditor is entitled to a deficiency judgment measured by the net proceeds of a commercially reasonable sale.[30]
Finally, this court disagrees with the holding in WenatcheeReclamation District v. Mustell, 102 Wn. App.2d 8, 684 P.2d 1275
(1984), which the plaintiffs cite in support of their claim that they are entitled to a hearing to determine the commercial reasonableness of the tax sale. That case involved the constitutionality of Washington state's procedure for foreclosing on delinquent irrigation assessments. A statute provided "that the county treasurer was to publish or post a list of delinquent assessments each year. The list was to include the names of persons to whom property was assessed, a description of the property delinquent, and the amount assessed. If the list was posted, the treasurer was to publish a list of the places where posted. [sic] Whether published or posted, the delinquency list was to be accompanied by a 20-day notice of sale indicating where and when the property would be sold if the assessments were not paid. The statute contained no requirement that notice be mailed to delinquent property owners, or that such persons be personally served. Nor did the statute require a hearing in connection with the sale." Id., 684 P.2d 1277. After holding that the absence of notice to property owners rendered the statutory scheme unconstitutional pursuant to Mennonite Board of Missions v.Adams, supra, 462 U.S. 791, and Mullane v. Central Hanover Bank Trust Co., supra, 339 U.S. 306, the court then addressed whether the foreclosure scheme of RCW 87.03 was unconstitutional because there was no provision whereby the property owner could contest the sale of the property. The plaintiff District claimed that due process was satisfied since a statute, RCW 87.03.255, conferred a right to a hearing to contest the fairness of the assessment. The court disagreed, stating: "In Boddie v. Connecticut, 401 U.S. 371. . . the Supreme Court (quoting Armstrong v. Manzo, 380 U.S. 545,552 . . . and Mullane, 339 U.S. at 313) held that due process requires that a person be afforded an opportunity, `granted at a meaningful time and in a meaningful manner, . . . for [a] hearing appropriate to the nature of the case . . .'401 U.S. at 378, 91 S.Ct. at 786. See also Olympic Forest Prods.,Inc. v. Chaissee Corp., 82 Wash.2d 418, 511 P.2d 1002 (1973). A hearing which inquires into the amount of an assessment is neither meaningful nor appropriate when the issue is whether a foreclosure on that assessment is fair or not. Thus, the CT Page 4959 assessment equalization hearing provided by RCW 87.03.255 is not enough to comport with the requirements of due process with respect to assessment foreclosure proceedings." Id., 684 P.2d 1279-80. While it is true that a prior opportunity to inquire into the amount of an assessment is not meaningful in an action to collect the tax,[31] in the absence of any assessment of the property owner's substantive due process or property right in connection with a sale or foreclosure proceeding, this court does not find the constitutional analysis or holding in WenatcheeReclamation Dist. v. Mustell, supra, 102 Wash. App. 2d 8, persuasive.[32]
This court holds that General Statutes § 12-157, as amended by Public Act No. 95-228, § 3, does not deny the plaintiffs procedural due process.
 VI
The plaintiffs claim that the one-year period within which a property owner may redeem his property is unreasonably, and therefore unconstitutionally, brief. The court disagrees. "`When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn . . . to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.' Louisville Gas Co. v. Coleman, 277 U.S. 32, 41 (1928) (Holmes, J., dissenting)." Schweiker v. Wilson, 450 U.S. 221, 238
n. 23, 101 S.Ct. 1074, 67 L.Ed.2d 155 (1981). The court cannot say that a year for a property owner to redeem his property from a tax sale is "very wide of any reasonable mark."
 VII
The plaintiffs claim that General Statutes § 12-157
effects a taking of their property without just compensation in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States because the statute does not provide for a commercially reasonable sale, resulting in a commercially reasonable sales price. This claim is manifestly CT Page 4960 premature.
The Fifth Amendment to the United States constitution states, in relevant part: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation." This provision applies to the states by virtue of theFourteenth Amendment to the United States constitution. Chicago, Burlington Quincy R. Co. v. Chicago, 166 U.S. 226, 233-34, 17 S.Ct. 581,41 L.Ed. 979 (1897).
"In the consideration of whether there has been a constitutional taking, it is the circumstances at the time of the taking . . . that are dispositive." Luf v. Southbury, 188 Conn. 336,348, 449 A.2d 1001 (1982). Since there has been no sale of the plaintiffs' property it cannot be said that there has been a taking.[33]
 VIII
The court is not unaware of the extremely depressed prices for which property often is sold at tax sales. The phenomenon is reflected in our case law. See, e.g., Ives v. Lynn, supra,7 Conn. 507-08 (1829) (20 acres of land in Durham sold for 10 cents at tax sale, plus 50 cents charges incident to sale). While such a sale cannot be expected to achieve a sale for fair market value; New England Savings Bank v. Lopez, supra, 227 Conn. 280; it is not unusual for the buyer at such a sale to walk away with a windfall purchase of valuable real estate at a price equal to the taxes owing — a mere fraction of fair market value. The statutes of some other states do provide for a procedure in which an interested party may challenge the price attained at a tax sale. See, e.g., Town of Sharon v. Kafka, 18 Mass. App. 541,468 N.E.2d 656, 657 n. 1 (1984) (motion to vacate a decree of foreclosure is provided by statute); Collector of Revenue, Cityof St. Louis v. Parcel #42-370, 672 S.W.2d 730 (Mo.App. 1984) (statute allows for court to confirm the sale and permits the court to raise the purchase price); Bogie v. Town of Barnett,129 Vt. 46, 270 A.2d 898, 901-02 (1970) (taxpayer may redeem the amount of taxes within one year from the sale, may challenge as invalid the acts relating to the collection of the tax within the one year period, or may sue the town as purchaser and grantee should town purchase the property because of insufficient bids at the public auction); Wong Him v. City of San Francisco,87 Cal.App. 80, 196 P.2d 135, 136-39 (1948) (statute grants one year CT Page 4961 for the validity of a deed issued to a taxing agency to be challenged in court).
Still, it is the power to collect taxes with which we are here concerned. "[T]axes are the life-blood of government, and their prompt and certain availability an imperious need." Bull v.United States, 295 U.S. 247, 259, 55 S.Ct. 695, 79 L.Ed. 1421
(1935).[34] "The legislature is vested with broad powers of taxation and may prescribe the conditions and methods of assessment, levy and collection." Ralston Purina Co. v. Board ofTax Review, 203 Conn. 425, 438, 525 A.2d 91 (1987).[35]
"Moreover, `this court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will.'" Gonsalves v. West Haven,232 Conn. 17, 26, 653 A.2d 156 (1995). "The function of the court is to determine not whether it is wise legislation but whether it is within the scope of legislative power." Columbus Industrial Bankv. Miller, 125 Conn. 313, 320, 6 A.2d 42 (1939).
Judgment may enter for the defendants declaring that (1) a prior levy on goods and chattels is not a precondition to selling real property for taxes owing, (2) real property may be sold for taxes owed on personal property even though no lien on the real property has previously been levied therefor, (3) General Statutes § 12-157 as amended by Public Act No. 95-228 § 3 does not deny the plaintiffs procedural due process, and (4) the one year period prescribed by § 12-157 within which to redeem real property sold pursuant thereto is not unconstitutionally brief.
Levin, J.